STATE OF IOWA v. LIGHTFOOT, Appellant.

**Evidence:** CRIMINAL LAW. Testimony that defendant charged with the crime of exposing a poisonous substance, with the intent that it should be taken by a horse, stated in a second conversation with a witness, in regard to his leaving the state, that he was not ready to go until he got through dealing with certain persons, will not be stricken out where, in the first talk, which occurred before the crime was committed, defendant stated that he had a little deal to make with the owner of the horse, "and when he did it it would be a damn sore deal with him," although witness did not remember that the owner's name was mentioned in the second conversation.

SAME. In a trial for the crime of exposing a poisonous substance with intent that it should be taken by a horse, evidence is admissible of the number of horses the owner had in different barns on the night of poisoning, the condition they were in at the time, the number of horses and kind and arrangement of stalls in the barn in which the poisoned horse was kept, the number of feed boxes 4 in the barn in which the poison was found, the number of separate barns in which horses were poisoned and the number of boxes shown to a druggist for examination, as tending to explain and show the premeditated and malicious character of the act causing the death of the horse specified, although no poison was taken from the latter's feed box, but where it contained some of the preparation in which poison was found in other boxes.

**Indictment.** An indictment charging defendant with wilfully and unlawfully exposing a poisonous substance, with the intent that it should be taken by a horse of another, is insufficient to charge 2 the offense defined in Code 1873, section 3977, as the *malicious* administering of poison to a horse or other domestic beast of another, or exposing any poisonous substance with the intent that the same shall be taken by them—for failure to charge that the act was done maliciously.

ROBINSON, C. J., and GRANGER, J., DISSENTING.

SETTING ASIDE. An indictment will not be set aside because the foreman of the grand jury, who was the magistrate before whom the

preliminary hearing was had, and who was directed not to take any part in the proceedings when the charge against the defendant was being investigated, signed the indictment "a true bill," since the fact that he performed a statutory duty in signing the indictment after the investigation had been completed and the action to be taken determined, does not overcome the presumption that he obeyed the direction of the court.

**Instructions:** COURT AND JURY: *Constitutional law.* The court in a criminal case cannot instruct the jury that any essential fact is established.

RULE APPLIED. A charge on the trial of the crime of exposing a poisonous substance, with the intent that it should be taken by a horse, that the evidence showed without contradiction that the crime charged had been committed and that the jury was to determine whether it had been committed by the defendant, is reversible error where, although there was circumstantial evidence tending to show that some of the owner's horses were poisoned and direct evidence that strychnine was found in some of the feed boxes, there was no direct evidence that the horses in question died from strychnine poisoning.

REQUESTING INSTRUCTIONS: *Alibi.* The failure of the court, in giving its charge, to refer to an alleged alibi is not error, where no request therefor was made, and no abuse of discretion is so shown, though defendant introduced testimony tending to establish an alibi.

**Appeal:** An objection that defendant was required to plead and go to trial on the day his demurrer was overruled and that he was not allowed the time given by law in which to plead and prepare for the trial, will not be considered on appeal where the record fails to show any objection below.

*Appeal from Cedar District Court.*—HON. H. M. REMLEY, Judge.

THURSDAY, JANUARY 26, 1899.

THE defendant was convicted of the crime of exposing a poisonous substance, with intent that it should be taken by a horse, and from a judgment which required that he be imprisoned in the county jail for the period of nine and one-half months, and pay the costs of the prosecution, he appeals. —*Reversed.*

*W. G. W. Geiger* and *R. R. Leech* for appellant.

*Millon Remley,* Attorney General, *C. O. Boling,* and *W. H. Redman,* for the State.

DEEMER, J.—The indictment charges that the defendant, "on the 3d day of May, A. D. 1894, did willfully and unlawfully expose a certain poisonous susbtance, to-wit, strychnine, by placing the same in or about the feed trough of a certain domestic animal, to-wit, a horse, Mollie Cedar, the intent then and there being that the said horse Mollie Cedar should take the said poisonous substance, the said horse being then and there the property of J. P. Stotler, contrary to the statutes of Iowa and in violation thereof." The evidence tends to show that, in the night following the day specified in the indictment, several horses owned by Stotler were poisoned with strychnine. They were in three barns, and five of them, including the one named in the indictment, were in one barn. From the evidence the jury may well have found that poison was exposed in the feed boxes of the horses, with the intent that it should be taken by them.

I.  In March, 1896, an information charging the defendant with the offense of which he was convicted was filed with W. G. Busier, a justice of the peace. The defendant was arrested by virtue of a warrant issued on the information, and brought before the justice, and, waiving examination, he gave bail for his appearance before the district court. When the grand jury which acted upon the information and returned the indictment was impaneled, Busier was appointed foreman. He was challenged by the defendant on the ground that he was the magistrate before whom the preliminary hearing was had. The challenge was sustained, and Busier was directed by the court not to take any part in the proceedings when the charge against the defendant was being investigated. The indorsement "A true bill" on the indictment was returned,

signed by Busier as foreman, and the defendant moved to set it aside for that among other reasons. The motion was overruled, and of that ruling the defendant complains. Section 4291 of the Code of 1873, as amended by chapter 42 of the Acts of the Twenty-first General Assembly, is as follows: "An indictment cannot be found without the concurrence of four grand jurors, when the grand jury is composed of five members; and not without the concurrence of five grand jurors when the grand jury is composed of seven members. Every indictment must be indorsed 'A true bill,' and the indorsement must be signed by the foreman of the grand jury." It was thus made the duty of the foreman of the grand jury to sign the indorsement required, although he might not have approved the indictment; and the fact that Busier signed the indorsement in question does not show that he concurred in the indictment, nor that he took any part in the proceedings which resulted in the indictment. Whether it would have been presumed that he did take part in such proceedings, had he not been directed to refrain from so doing, we have no occasion to determine. It must be presumed, in the absence of a showing to the contrary, that he obeyed the direction of the court; and the fact that he performed a statutory duty in signing the indorsement, after the investigation had been completed and the action to be taken determined, does not overcome that presumption.

II.   One ground of the motion to set aside the indictment was that the minutes of the evidence of J. W. Carney, whose name was indorsed on the indictment as that of a witness, were not returned with the indictment. The record does not show that the minutes referred to were not so returned.

III.   Defendant demurred to the indictment, and his demurrer was overruled. It is contended that this was error, for the reason that the indictment does not charge that the acts were done maliciously. The charge is based upon section 3977 of the Code of 1873, which is found under the

head of "Malicious Mischief and Trespass on Property," and reads as follows: "If any person maliciously kill, maim or disfigure any horse * * * or other domestic beast of another; or maliciously administer poison to any such animals; or expose any poisonous substance with intent that the same should be taken by them, he shall be punished," etc. The indictment charges that defendant willfully and unlawfully exposed a poisonous substance, to-wit, strychnine, etc. Does this charge an offense, under the section quoted? It will not do to say that it is a crime for one to expose poison with the intent that the same should be taken by the animals of another. Such act, under the statute, must have been maliciously done, and to charge that the act was unlawful and willful is not equivalent to saying that it was malicious. *State v. Gove,* 34 N. H., 516; *State v. Hussey,* 60 Me., 410. The term "willful" means only that the act was done intentionally, or that it was done purposely and deliberately. *State v. Windahl,* 95 Iowa, 470; *State v. Clark,* 102 Iowa, 685. And the term "unlawfully" implies that an act is done contrary to law. *State v. Massey,* 97 N. C. 465 (2 S. E. Rep. 445). The insertion of the word "unlawfully" does not dispense with the necessity of specifically alleging the elements required by the enacting clause of a statute and by the rules of criminal pleading to constitute the crime charged against the defendant. *Com v. Byrnes,* 126 Mass., 248, and cases cited. All that is charged in the indictment is that defendant purposely exposed poison, in disregard of law. To our minds, this does not charge an indictable offense. Code 1873, section 4298, says that an indictment must be direct and certain as regards the particular circumstances of the offense charged, when they are necessary to constitute a complete offense. We have held that it is not sufficient to simply charge that an act was unlawfully done. *State v. Railway Co.,* 63 Iowa, 508. In construing a similar statute to the one now under consideration, we said in *State v. Harris,* 11

Iowa, 414: "Malice towards the owner of the animal is the ingredient of this offense." See, also, *State v. Williamson,* 68 Iowa, 351, and *State v. Linde,* 54 Iowa, 139, which apply the same rule to the statute now under consideration. There can be no doubt, we think, that the proper construction of the statute is that, to constitute a crime, the poison must be maliciously exposed. While it may be true that the proper grammatical construction of the statute is that it is a crime to expose poison at any time, and for any purpose, with intent, etc., yet we do not think the use of a semi-colon instead of a comma is controlling. Punctuation, if of any significance, is always the last resort. *Shriedley v. State,* 23 Ohio St., 130. The place in which the section is found in the Code is quite significant. If malice is an essential ingredient of the offense, it must be charged, and the use of the words "willfully and unlawfully" is not sufficient. *Boyd v. State,* 2 Hump. 39; *Thompson v. State,* 51 Miss. 353; *State v. Jackson,* 34 N. C. 329; *Com. v. Williams,* 110 Mass. 401; *State v. Newby,* 64 N. C. 23. The case of *State v. Gould,* 40 Iowa, 372, is not in conflict with this conclusion. The indictment in that case was framed under section 4089 of the Code of 1873, not under 3979, and malice is not an essential ingredient of the crime of nuisance. It is always an essential in cases of malicious mischief. See cases heretofore cited, and *People v. Olsen,* 6 Utah, 284 (22 Pac. Rep. 163); *U. S. v. Gideon,* 1 Minn. 292 (Gil. 226); *State v. Pierce,* 1 Ala. 728; *State v. Wilcox,* 3 Yerg. 277. The demurrer to the indictment should have been sustained.

IV. The appellant complains that he was required to plead and, go to trial on the day the demurrer was overruled, and that he was not allowed the time given by law in which to plead and prepare for trial. The record fails to show any objection to what was thus done.

V. On the trial Stotler was permitted to state, notwithstanding objections of the defendant, the number of

horses he had in different barns on the night of the poisoning; the condition the horses were in at the time; the number of horses and kinds and arrangement of stalls in the barn in which Mollie Cedar was kept; the number of boxes in that barn in which poison was found; and the number of separate barns in which horses were poisoned; and the number of boxes shown to a druggist named Hampton for examination. We do not find any error in admitting the evidence to which reference has been made. No poison was taken from the box of Mollie Cedar, although it contained some of the preparation in which strychnine was found in other boxes. The testimony in regard to other horses and other barns tended to explain and show the premeditated malicious character of the act which caused the death of Mollie Cedar.

VI. A witness named Alger was permitted to testify that he and the defendant were talking about going to Missouri, and that the defendant said "he was not ready to go yet, until he got through dealing with some of these sons of bitches around here." A motion to strike out that testimony was denied, and of that ruling the defendant complains. He relies upon *State v. Millmeier,* 102 Iowa, 692, as supporting his complaint. There is nothing in that case to indicate to whom or to what the threat of the defendant, which was in question, referred. The threat or statement under consideration in this case was made in a second conversation which the witness had with the defendant. In the first one, which occurred before the horses were poisoned, the defendant stated that "he had a little deal to make with Stotler, and when he did it would be a damned sore deal with him." The witness did not remember that Stotler's name was mentioned in the second conversation, but the jury may well have found the reference to have been to Stotler. Under these circumstances, we think the motion to strike the testimony was properly overruled.

VII. Testimony was given in behalf of the defendant which tended to show that he was at his home during all of the night in which the poisoning was done, and he complains because the court did not charge the jury in regard to an alibi. No instruction of that character was asked, as in *State v. Porter,* 74 Iowa, 623, and the court did not abuse its discretion in not referring to the alleged alibi in its charge.

VIII. In the fourth paragraph of the charge the court stated that the evidence showed, without contradiction, that the crime charged had been committed, and that the jury was to determine whether it had been committed by the defendant. It seems to us that in so doing the court clearly invaded the province of the jury. The rule is well settled that the jury alone can determine questions of fact in a criminal case, and that the judge cannot, either in his charge or at any time during the trial, declare or deny the existence of any fact bearing on the issue and which is in contest. *Moore v. State,* 85 Ind. 90. Our fundamental law guarantees to one accused of crime the right to a public trial by an impartial jury. Section 10, article 1, Constitution. And, to safeguard his rights in this respect, the legislature expressly provided that "on the trial of an indictment for any other offense than libel questions of law are to be decided by the court. * * * Questions of fact are to be tried by jury." Code 1873, section 4439. So tenacious have we been for this rule that we have uniformly held that a defendant in a criminal case, be the charge a felony or a misdemeanor, cannot waive a jury, and submit his case to the court to find the facts. *State v. Tucker,* 96 Iowa, 276; *State v. Douglass,* 96 Iowa, 308, and cases. Now, if the court cannot try an issue of fact by consent, it is difficult to see on what theory he may find some of the facts over the defendant's protest. The plea of not guilty puts in issue every material element of the offense charged, and, if the court may find one fact established, it may find all. We do

not think the court has power to instruct that any essential fact is established, notwithstanding there may be no evidence to the contrary. The jury have the right to disbelieve any of the witnesses whose evidence they see fit to reject, and the court is powerless, in criminal cases. *Com. v. Knapp,* 10 Pick. 477. They have power to return a verdict of acquittal in a criminal case, although the evidence clearly shows the commission of the crime and is uncontradicted. In this sense, a jury in a criminal case is judge of both the law and the fact; for the court cannot set aside its verdict and grant a new trial. But, aside from this, as the jury must pass upon all questions of fact, they, of necessity, must weigh the evidence, and in doing this they have the right to disbelieve any and all the witnesses. As said by Garoutte, J., in the case of *People v. Webster,* 111 Cal. 381 (43 Pac. Rep. 1114): "A jury in a criminal case is not bound to believe the uncontradicted statement of a witness as to a fact." That court, in *People v. Murray,* 86 Cal. 34 (24 Pac. Rep. 802), said: "The jury were not bound to take the testimony of any witness as true. From the manner of the prosecuting witness, and the nature of his whole testimony, the jury might have disbelieved him, if the defendant had not introduced any evidence at all. This whole matter was for the jury, and not for the court." Again, that court said, in *People v. Casey,* 65 Cal. 261 (3 Pac. Rep. 874), that the trial court had no right even to tell the jury what the evidence 'shows.' The province of the jury, in passing upon the facts of a case, is a broad one. It is practically unlimited. It is a constitutional right given to the jurors, it is a constitutional duty imposed upon them. They were not bound to take this witness' statement of her age as true. They had the right to disbelieve it and were not holden to any court for dereliction of duty in not believing it. It would be a matter between them and their consciences alone. It is for the jury to say when truth and when falsehood come from the mouth of the witness. The conduct of this

witness when upon the stand may have shown her to have been lying. Her appearance may have shown her to have been of mature years. The inherent improbabilities of her testimony may have placed it beyond the pale of belief." These rules do not prevent the court from directing a verdict of not guilty nor from saying that the defendant was not guilty of some particular offense as in *Sparf v. U. S.* 156 U. S., 51 (15 Sup. Ct. Rep. 273), which contains a most elaborate discussion of the question of jurors being judges of both the law and the fact. But this is quite a different proposition from saying that the evidence does establish a certain fact beyond dispute. To say that a fact is not established in a criminal case, and that, therefore, the defendant is not guilty, is quite different from saying that a certain element of the crime is established by the evidence, and that but one more fact need be established to make out the offense. In the case of *People v. Garbutt,* 17 Mich. 9, Judge Cooley, speaking for the court, said: "The trial of criminal cases is by a jury of the country, and not by the court. The jurors, and they alone, are to judge of the facts and weigh the evidence. The law established this tribunal because it is believed that, from its numbers, the mode of their selection, and the fact that the jurors come from all classes of society, they are better capable to judge of motives, weigh probabilities, and take what may be called a 'common-sense view' of a set of circumstances, involving both act and intent, than any single man, however pure, wise, and eminent he may be. This is the theory of the law, and, as applied to criminal accusations, it is eminently wise and favorable alike to liberty and to justice. But, to give it full effect, the jury must be left to weigh the evidence, and to examine the alleged motives, by their own tests. They cannot properly be furnished for this purpose with balances which leave them no discretion, but which, under certain circumstances, will compel them to find a malicious intent when they cannot conscientiously say they believe such an

intent to exist." In the case of *Houston v. State,* 4 G.
Greene, 437, defendant was accused of the crime of defacing
and marking a school house, and the trial court instructed
that the state had proved all that was necessary with refer-
ence to the school district. This court said: "This is error.
This was charging the jury upon the weight and sufficiency
of testimony. It is not within the province of a judge to
instruct a jury as to what facts are proved or not proved.
He may explain to them the legal effect of facts, but the
facts themselves are to be ascertained by the jury. Better
abolish the right of trial by jury at once than to per-
mit judges to dictate the facts upon which the verdict must
be founded. The practice of charging the jury upon the
facts may have precedent in some of the older states; but in
Iowa it has ever been regarded as dangerous, as a usurpation
of power, and as an interference with the rights of parties
and the province of jurors." That rule thus so clearly stated
has never been departed from in this state, unless it be in one
case, to which we will hereafter call attention. See, also,
*State v. Donovan,* 61 Iowa, 369; *State v. Stowell,* 60 Iowa,
535; *State v. Porter,* 74 Iowa, 627. In the case now
before us there was circumstantial evidence tending
to show that some of the prosecuting witness' horses
were poisoned, and direct evidence that strychnine was
found in some of the feed boxes, not, however, in the one where
the mare Mollie Cedar was kept. True, she died about the
same time that the other horses did, but there is no direct
evidence that her symptoms denoted strychnine poisoning.
There is evidence from several witnesses that they thought
the mare had the colic. There is also evidence to the effect
that all the horses appeared as if they had been poisoned.
Now, if the jury had found that the mare in question had
been poisoned, no court would have disturbed their verdict.
But it was certainly a question of fact for the jury, and not
of law for the court. The attorney general contends, how-
ever, that defendant admitted while on the witness stand

that the horses had beeen poisoned. This is a mistake. He did, it is true, refer to the horse poisoning as fixing a date or a time, and also stated that he learned of the poisoning at a certain time. But this was simply to fix a date, and to make clear his whereabouts at a particular time. After a careful examination of the entire record, we think we may safely affirm that the defendant nowhere admitted that the horses were in fact poisoned. We are confirmed in this view by the fact that at the conclusion of the evidence defendant moved for a verdict, and one of the grounds of his motion was that there was no evidence that the animal had been poisoned and no evidence that there was any poison in her trough. If the fact had been admitted, it is strange that such a motion should have been made. In this respect, as well as in some others, the case differs from *State v. Huff*, 76 Iowa, 200. There the defendant had a permit to sell liquor, and the state introduced the certificates filed by him showing such sales. These were distinct written admissions by the defendant that he had made sales, and were held to be admissible for the purpose. On this state of facts, the trial court instructed that the testimony showed that defendant sold intoxicating liquors at his place of business, and that the only question to be considered was whether he made the sales in good faith, for the actual necessities of medicine. In that case there was a solemn written admission of the defendant that he had sold liquors, and the instruction was held to be correct. Without, at this time, questioning the rule of that case, it is sufficient to say that it is not an authority in support of the instruction given in the case at bar. Many civil cases can be found supporting the rule of the instruction given in this case, but they are not applicable, for reasons which sufficiently appear from what has already been said. We think the instruction was erroneous, and that the question of fact assumed therein to be true should have been submitted to the jury.

IX. Lastly, it is insisted that the verdict is not supported by the evidence. In view of the reversal, it is better that we express no opinion upon this subject. For the errors pointed out the judgment is REVERSED.

Robinson, C. J. (dissenting).—I concur in the reversal of the judgment of the district court, but do not agree with the conclusion of the majority that the indictment was not sufficient. The section of the Code of 1873 under which it was returned describes three offenses, using the word "maliciously" in defining each of the first two, and omitting that word in defining the third, which is the one charged in the indictment. The omission cannot be regarded as accidental, and, although perhaps unwise, should, I think, be given effect. The indictment charges that the defendant did willfully and unlawfully commit the act described, substantially in the language of the statute, and, according to the rule generally applied in such cases, that was sufficient. See *State v. Bair,* 92 Iowa, 28; *Munson v. State,* 4 G. Greene, 483; 2 McClain Criminal Law, section 833. Of the cases of *State v. Harris,* 11 Iowa, 415; *State v. Williamson,* 68 Iowa, 351, and *State v. Linde,* 54 Iowa, 139, cited in the opinion of the majority on this question, the first and second involved the maiming and disfiguring, and the third the killing, of domestic animals. In none of them was the offense sought to be charged in this case in any manner involved, and they do not appear to be in point. It is my opinion that the ruling on the demurrer to the indictment was correct.

Granger, J., concurs in the dissent.