STATE OF IOWA, appellee, v. WILBERT (WILLIE) WARREN, appellant.

No. 47453.

(Reported in 47 N.W.2d 221)

April 4, 1951.

Rehearing Denied October 19, 1951.

Connolly, O'Malley & McNutt, of Des Moines, for appellant.

Robert L. Larson, Attorney General, Allan A. Herrick, Special Assistant Attorney General, and Robert R. Buckmaster, Special Assistant County Attorney, for appellee.

WENNERSTRUM, C. J.—The defendant and ten other defendants were jointly indicted by the grand jury of Black Hawk County, Iowa, and in the indictment it was charged that they conspired together to unlawfully interfere with and obstruct the police officers of Waterloo, Iowa, and the sheriff of Black Hawk County and his deputies in their efforts to prevent breaches of peace and other unlawful acts at and in the vicinity of the Rath

Packing Company; also in preventing by force, violence and intimidation employees of the packing company from returning to work and from entering and leaving the premises of the packing plant, which said last referred to acts were in violation of an injunction obtained in the district court of Black Hawk County. Each of the defendants pleaded not guilty and was granted a separate trial. The defendant, Wilbert (Willie) Warren, was tried and found guilty by a jury. He was sentenced to a term of not to exceed three years in the state penitentiary at Fort Madison and pay the costs of the case. Section 719.1, 1946 (1950) Code. He has appealed and we here review the claimed errors in connection with his trial.

The incidents shown in the evidence developed by reason of a strike of the employees of the Rath Packing Company which commenced on March 16, 1948. The plant was closed by reason of this work stoppage for approximately one month. On April 17, 1948, it was reopened, after notice had been given to the employees by the company of its intention to do so. Several acts of violence, in which it is claimed the appellant was directly or indirectly involved, occurred on the last mentioned date and on several subsequent dates. On May 19 one Rodman Baker brought his wife, who was an employee of the packing company, to the plant on a motorcycle. When he stopped his machine for the purpose of permitting her to alight, he was surrounded by pickets. During an argument at that time the appellant, Wilbert Warren, struck Baker and he was knocked to the ground. On this same day while one Fred Lee Roberts was approaching the plant in his car, it was stopped, was rocked and tipped and at the time of this incident Roberts drew a gun and shot it. A striker was killed. The evidence in connection with these previously mentioned incidents and other events that occurred during the strike show that Wilbert Warren participated in and was to a varying degree a party to each of them. It is shown that Warren used and spoke over a loud speaker operated by the strikers and by means of which the workers entering the plant were derided and the strikers were encouraged and directed in connection with their activities. It was also shown that at times the loud speaker was used in directing the strikers to limit their activities. The record discloses that Warren was an active participant in the strike activities and at

definite periods during the strike served as a picket lieutenant, a departmental steward, and, on occasions, as officer of the day for the strikers.

We shall not set out the facts relative to the several incidents in detail at this point but will comment upon them later as our consideration of the claimed errors presented on this appeal requires us to do so. In this connection it should be stated the evidence amply shows that Warren did participate and conspire with other defendants in doing the acts which are referred to in the indictment. The appeal is largely directed to claimed errors pertaining to the reception of evidence and its sufficiency.

I. On the evening of May 17, 1948, a striker's meeting was held. On this occasion men from St. Paul, who had been or were connected with the union involved in a packing house strike there, spoke at the Waterloo meeting. There is evidence that these men criticized the Rath strikers and told them that they should use rougher tactics. On May 18, 1948, it is shown that one Krogman was present at a union soup kitchen or headquarters, as were numerous other strikers. There is no direct testimony that the appellant, Warren, or any of the other defendants was present. Relative to this particular occasion Krogman testified, over the objection that his statements would be "hearsay, incompetent and irrelevant", that he overheard two strikers converse, and the record in this connection is as follows:

"Q. Now go ahead and relate the conversation. A. The conversation between these two men? Q. Yes. What you overheard. A. One seemed to be of the opinion they should do what they were doing at St. Paul. He said he was getting tired of sitting around and getting nothing accomplished, and the man he was talking to said he was going to ask the Union officials what they were going to do about it."

■ It is the appellant's contention that the testimony heretofore set out was objectionable and should not have been admitted because of its hearsay character. A review of the record shows that none of the claimed conspirators was present at that time. There is evidence that Warren was present at the meeting where the St. Paul men spoke. This evidence was presented without any objection. The State seeks to justify the admission of this testi-

mony on the basis that it was admissible on the theory that the claimed conspiracy may be, and generally is, proved by circumstantial evidence. It is our conclusion the reception of the testimony heretofore set out was objectionable. However, evidence of a similar character was received without objection in previous or later testimony concerning the meeting addressed by the St. Paul men. We believe that this error was not of such a prejudicial character to justify a reversal. State v. Walters, 178 Iowa 1108, 1117, 1118, 160 N.W. 821; State v. Hassan, 149 Iowa 518, 528, 128 N.W. 960. The conspiracy has been definitely shown by other circumstantial evidence.

A further claimed error pertains to the admissibility of certain testimony given by the State's witness, Parker, a member of the Waterloo Police Department. He, in answer to an inquiry whether he knew a man by the name of Otterman, replied that he had seen Otterman around during the strike, that he did not know whether he was a picket and that he saw him around May 19 and had a conversation with him. The appellant objected to this testimony on the ground that it was of a hearsay nature; that Otterman was not one of the main so-called conspirators; that there was no foundation showing any privity between Otterman and Wilbert Warren; and that Otterman had not been identified as a picket or a participant in the alleged conspiracy. To this objection the prosecution stated that it would later show that Otterman was a picket captain and had been on the picket line the morning in question.

Parker then testified that he asked Otterman about a meeting that was scheduled for the next day for the purpose of making an effort to settle the strike and that Parker then stated that he hoped something would come out of it and that Otterman then replied, in substance—if something did not happen before the proposed settlement meeting. It is the claim of the appellant that no later connection was made showing Otterman as a picket captain or on the picket line during the morning of May 19. At the conclusion of the State's case, as well as at the conclusion of the submission of all the evidence, the appellant made a motion to strike all testimony that had been admitted over objections of the appellant. The court overruled this motion.

The State maintains that there was subsequent evidence connecting Otterman with the strike and the strikers' activities in that at a conference between the management of the packing company and the strikers, two union representatives were present and that the name of one of them was Howard Otterman. It is also brought out in the argument of the State that a Velma Otterman, who was a witness for the appellant, testified that her husband, Howard Otterman, was an officer of the day in connection with the strikers' activities. We believe there has been sufficient showing of an active participation on the part of Otterman in the strike activities. He is shown to have been an officer of the day and strike captain, which was a similar position to that held by Warren. We believe there was no sound ground for the motion to strike the testimony of which complaint is made and that there was no error in not doing so.

There is a further claimed error in connection with the admission of certain testimony, which was later stricken by the court, given by a Howard Sawyer, a nonstriking employee of the company. It is the claim of the appellant that the evidence originally admitted was of such a character that the error of its original admission could not be cured by striking it from the record. The testimony of which complaint is made relates to an incident when two of the windows of Sawyer's home were broken early one morning. Objection was made to any testimony pertaining to this occurrence and it was agreed by counsel for both the State and the appellant that this objection should apply to all testimony pertaining to this occasion. It is shown that those who threw the rocks were not identified; that Sawyer shot at the car as it was leaving the home. He also testified he was sure he knew the voice of Ray Edsill, although he did not know him, and that he heard his voice that morning about thirty minutes after the windows were broken when a party called him on the telephone and directed an epithet toward him. He stated it was the voice of Ray Edsill. Edsill was charged with being a coconspirator and it is shown by the record that he had spoken frequently over the loud speaker used by the strikers. The appellant moved to strike the last statement relative to the recognition of the voice of Edsill as incompetent, immaterial and not binding on Warren. This was overruled. At the conclusion of the direct testimony of the wit-

ness, the appellant moved to strike all the testimony concerning the alleged throwing of the rocks and the shooting as incompetent, irrelevant, immaterial and not binding on any of the defendants, inasmuch as none of them had been shown connected with the particular incident by the State. This motion was overruled. The appellant then moved to strike out all the testimony except that pertaining to the telephone conversation and this motion was sustained. During cross-examination Sawyer stated that he had never talked to Edsill on the telephone before or since and that he did not want to make a positive statement that it was Ray Edsill's voice that he heard over the telephone. The appellant then moved to strike any reference to the conversation. The court sustained this motion. On redirect examination the witness then changed his testimony and stated that it was the voice of Ray Edsill. The court then withdrew its former ruling pertaining to the striking of the telephone conversation and let the same stand as a part of the record. It stated in its ruling that the force and effect of the witness's testimony relative to the telephone conversation was for the determination of the jury. The claimed error appears to be directed toward the admissibility and the later striking out of the testimony concerning the rock throwing incident. It is the claim of the appellant that he was prejudiced by reason of the admission of the testimony even though it was later stricken. This is not a sound contention. In In re Estate of Iwers, 225 Iowa 389, 403, 404, 280 N.W. 579, 587, this court set out a ruling which had been previously and has also been subsequently followed.

"The general rule is that, if evidence erroneously admitted during the progress of a trial is distinctly withdrawn by the court, the error is cured, except in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained despite its exclusion and influenced their verdict." (Citing 4 C. J. 898, section 2972; McKee v. Iowa R. & L. Co., 204 Iowa 44, 214 N.W. 564.)

We have given consideration to the cases cited by the appellant to wit: State v. Paden, 199 Iowa 383, 202 N.W. 105, and State v. Hartman, 213 Iowa 546, 233 N.W. 533, 239 N.W. 107. The facts in these cases show circumstances which are not present in the instant case. It is our conclusion that there was no error

in the record by reason of the original admission of testimony and the later striking of it in that there was no prejudice shown.

II. It is one of the contentions of the appellant that the court committed prejudicial and reversible error in sustaining objections made by the State to the offered testimony of the defendant and certain other witnesses, namely, Fred Holgate, Velma Otterman, Russell Lasley and Russell Bull. It would unduly lengthen this opinion if we were to set out the offered testimony, the objections to which were sustained by the court, on the ground that the answers would be hearsay testimony and self-serving. Our examination of these particular questions involved in this phase of the appellant's appeal and the proffered testimony shows that they unquestionably call for self-serving and hearsay answers. Such offered testimony is not admissible. 20 Am. Jur. 470, section 558. In the case of State v. Brooks, 192 Iowa 1107, 1116, 186 N.W. 46, 51, the question there presented was as here contended by the appellant that the offered statement constituted part of the *res gestae*. We there stated:

"They must be something more than a mere narrative of a past occurrence and must be made at the time of the act done or reasonably near the time and must be considered as a part of the same continuous transaction. Such declarations are generally considered as the spontaneous utterance of thought created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premeditation and design. They are automatic in a sense and a necessary incident of the litigated act."

In a further division of the appellant's brief, a claimed error is asserted by reason of the fact that the court refused the offer of certain exhibits identified by certain witnesses called by the appellant. These exhibits were handbills that were distributed on different occasions to the strikers. In these various exhibits there were statements which admonished the strikers to exercise restraint in the carrying on of the strike. There can be no question that this offered testimony was of a self-serving nature and was properly excluded by the court.

III. Another claim of the appellant is that the court erred in its failure to give an instruction in regard to testimony

concerning verbal statements and to the weight that should be given to them; and also the court's failure to give an instruction in regard to the weighing of the testimony of witnesses who admitted that they had been convicted of a felony. It is the claim of the appellant that it was the duty of the court, whether requested or not, to give the jury an intelligent understanding of the issues and that it should have, on its own motion and volition, instructed the jury pertaining to the weight to be given verbal statements and therein caution them that such statements are subject to much imperfection and mistake. The appellant took an exception to the instructions and therein made comment of the failure of the court to give an instruction concerning the matters of which he now complains. In State v. Schenk, 236 Iowa 178, 195, 18 N.W.2d 169, 177, the court held that it was not a reversible error in the absence of a request to give a certain instruction under the particular circumstances therein applicable, and it was therein stated:

"As we read the record there was no special defense. The plea was not guilty. This court, in State v. Lightfoot, 107 Iowa 344, 78 N.W. 41, held that it was not error, in the absence of request, to fail to instruct as to an alibi, although evidence had been introduced tending to show that the defendant was not at such place when the crime was committed, and that he could not have participated in its commission. State v. Porter, 74 Iowa 623, 38 N.W. 514; State v. Brandenberger, 151 Iowa 197, 130 N.W. 1065, and cases there cited. * * *

"It seems to us that the claim of defendant is that the trial court should have instructed as to certain specified evidence offered by him. We have held that it is not necessary, in the absence of a special request for instructions relating to the bearing of specific evidence, to instruct as to such matters of evidence. State v. Seevers, 108 Iowa 738, 78 N.W. 705. That defendant was a labor organizer and helped workers organize under the law and advised against force and violence would hardly be a special defense, although it might tend to throw some light upon the ultimate question, to wit, the guilt or innocence of the defendant. We hold that this claim of defendant was without merit."

1186

The appellant also makes complaint of the fact that no reference is made in the instructions to the credibility to be given to the testimony of one who had been convicted of a felony. No request for instruction along this line was made by the appellant. Our previous comment concerning the absence of a request for an instruction is here applicable. The previous conviction of a felony is a circumstance to be considered by the jury in testing the credibility of a witness. State v. Voelpel, 208 Iowa 1049, 1052, 226 N.W. 770. The court gave a general instruction relative to the credibility to be given to the testimony of a witness. However, no reference was made to those previously convicted of a felony. Under the circumstances we find no error.

IV. Another claimed error presented as a ground for reversal relates to the participation of Blair Woods, the County Attorney of Black Hawk County, in the trial of the appellant. The record shows that Allan Herrick had been appointed as special assistant attorney general particularly for the trial of this case and that the indictment was signed by him in that capacity and was not signed by Blair Woods, the county attorney. Robert Buckmaster was named as a special assistant county attorney to assist in the prosecution of the case. Mr. Woods, the county attorney, was not present at the time the trial commenced on September 13, 1948, and did not appear at the counsel table until September 16, 1948. On the last mentioned date, apparently as a result of testimony which had been introduced, Mr. Woods appeared at the counsel table and conferred with the attorneys representing the State. Counsel for the appellant then took exception to Mr. Woods' association with the prosecution staff and stated that it was apparent he was examining exhibits, taking notes, and apparently participating in the proceedings. It was the appellant's contention that the presence of Mr. Woods at the counsel table in this capacity was prejudicial to the appellant. There was considerable record made in connection with this matter and the court later overruled the exception taken by the appellant. Further exceptions growing out of Mr. Woods' later appearance at the counsel table were also taken. The court overruled each exception made. It should be particularly stated that Mr. Woods was not present at the time the jury was selected and no inquiry was made of the jurors relative to their acquaintance and associ-

ation with him. It is the claim of the appellant that because his counsel had no reason to inquire of the jurors at the time of their selection relative to their acquaintance and association with the county attorney he was denied his constitutional right to a fair and impartial trial. Mr. Woods testified, in the absence of the jury, that due to the necessity of his giving attention to other matters pertaining to his office he did not have the time to prepare the case for trial. The State calls our attention to the case of In re Will of Winslow, 146 Iowa 67, 69, 122 N.W. 971, 124 N.W. 895, Ann. Cas. 1912B 663, 664, where a new counsel came into the trial of the case after one of the counsel for the proponents had made his opening statement. Appellant's counsel states that the two cases are not similar because in the cited case the trial had proceeded only a short time while in the instant case three days had elapsed since the jury was impaneled. In the Winslow case this court stated:

"Many contingencies are possible which will justify the admission of new or additional counsel in a case after a jury has been impaneled, or even in the midst of a trial. The statute does not forbid it in terms or by necessary implication. The exercise of such right or privilege is, of course, subject to the discretion of the trial court, and if there be good ground to believe that the delayed appearance of counsel is a trick or device to secure undue advantage in the trial, objection thereto will be sustained. In the case at bar the court seems to have made careful inquiry into the situation, and satisfied itself that the proponents would suffer no prejudice by permitting Mr. Tripp to appear with counsel for contestants, and the record discloses no error in this respect."

In the present case the trial court made extensive inquiry relative to Mr. Woods' original absence from the trial table and apparently satisfied himself that the appellant had suffered no prejudice. Another fact that should be considered is that Mr. Woods was the County Attorney of Black Hawk County and he had a right and duty to participate in the trial. It is our conclusion that the court did not abuse its discretion under the facts as disclosed by the record.

V. It is also the claim of the appellant that one of the attorneys representing the State was guilty of prejudicial miscon-

duct in his cross-examination of witnesses and his argument to the jury. These incidents will be briefly related, as follows: During the cross-examination of Russell Bull, he was asked if he knew Leo Mitchell, one of the men who had come from St. Paul. He was then asked: "Did you know that Leo Mitchell was one of the 39 indicted in St. Paul, and the first one in the list for violence, and is now in jail up there?" Objection to this question as being prejudicial misconduct and not proper cross-examination was made by appellant's counsel. One of the counsel for the State then stated in the presence of the jury: "If the court please, he invited these men down here, I want to know what he knows about them." The court sustained the objection on the ground that it was improper cross-examination.

When Donald Young, a witness for the appellant, was cross-examined, one of the attorneys for the State asked the following question: "Do you recall telling John McKinley, in the company of these other gentlemen, that you were going to make it rough from now on and that you could turn over cars the same as they did in other places?" An objection was made that this question was not proper cross-examination, that the matter had not been gone into on direct examination and was immaterial and prejudicial. The court sustained the objection. One of the State's attorneys then stated that the question was being asked for the purpose of making a foundation for impeachment, to which the counsel for the appellant then stated to the court that the party had not on direct examination testified to any conversation alleged with McKinley, and the attorney for the State then continued his question, as follows: "Do you recall going out to his house on two successive nights in company with the other men?" The objection was then again made that the question was not proper cross-examination. The court sustained this further objection.

In the course of the argument made to the jury by one of the counsel for the State, he stated: "We had the same thing happen here as up there." This was a reference to the St. Paul situation. It was excepted to as prejudicial and not within the record. The court sustained the objection and directed the jury to give no consideration to the statement.

The appellant gives particular emphasis to the incidents referred to in this division, and it is his claim that the comments

which were made by counsel for the State, as well as the questions asked, were of such a prejudicial character as to constitute misconduct even though the objections to them were sustained. Numerous cases are cited by appellant's counsel where, under the particular facts shown, prejudicial misconduct was condemned. However, the granting of a new trial for claimed misconduct of counsel is within discretion of the trial court. In State v. Cooper, 169 Iowa 571, 587, 151 N.W. 835, 841, this court stated:

"The rule is that mere misconduct of counsel is not enough alone to require the granting of a new trial, unless it appears to have been so prejudicial as to deprive the complaining party of a fair hearing of his case by the jury on the evidence. The trial court having heard all that took place on the trial, we ought not to interfere with his discretion in refusing a new trial. *State v. Thomas*, 135 Iowa 717; *State v. Waterbury*, 133 Iowa 135; *State v. Norman*, 135 Iowa 483; *State v. Wilson*, 157 Iowa 698."

In the instant case it is our conclusion that the trial court did not abuse its discretion in overruling appellant's claim that there had been prejudicial misconduct.

VI. It is a further claim of the appellant that the court committed a reversible error in striking from the record portions of the affidavit of the juror, Esther Steimel, who was foreman of the jury. In connection with the motion for new trial there was attached the affidavit of this juror. A motion to strike the greater portion of this affidavit was sustained and because of this ruling error is claimed. In the affidavit Esther Steimel stated that she had told the lady bailiff that one of the other lady jurors was ill, that the jury was deadlocked, that she, Mrs. Steimel, wanted the lady bailiff to take a note to the judge, and that she was told by this bailiff, "It won't do any good because you know you have to return a unanimous verdict as they won't accept a hung jury, as this case is too important." It was also asserted in the affidavit that the man bailiff, during the time of the deliberation by the jury, stated to Mrs. Steimel that the jury was to be taken out for dinner as soon as a doctor came and looked after a sick woman and that they would then be taken to the hotel for rest until later in the evening when they would be returned to the courthouse for further deliberation. Mrs. Steimel further

stated that one of the jurors had informed her that she was unable to walk from the courthouse to the place where they were to eat; that the only reason she voted for "guilty" was that she thought it would be necessary for the jury to remain until a unanimous verdict was reached; and that she was concerned over the general physical condition of some members of the jury. There were presented to the court affidavits of eight other members of the jury wherein it was stated that the matters set forth in Mrs. Steimel's affidavit were not true. We shall not set out in detail the affidavit of Mrs. Steimel or the counter affidavits. It has been the repeated holding of this court that matters stated in affidavits pertaining to what transpired during the jury deliberations may be shown, but whether the verdict was, or was not, affected by what happened has to do with matters that inhere in the verdict and are not to be considered. State v. Siegel, 221 Iowa 429, 432, 264 N.W. 613, 615; In re Estate of Murray, 238 Iowa 112, 118–120, 26 N.W.2d 58.

In connection with another claimed error which relates to the alleged prejudicial misconduct of the bailiffs, it is asserted that the bailiffs indirectly influenced the jurors. It is claimed that after a conversation with one of the bailiffs wherein it was stated that the jury was to be taken out to eat and then to the hotel for rest, the jurors agreed upon a verdict within a short time. It is also contended that the jury had been segregated for three weeks; that as many as eight men had slept in one room in the hotel; that they had deliberated from two o'clock in the afternoon of October 1, 1948, until they reached a verdict about 11:40 a.m. on October 3, 1948. In State v. Siegel, supra, this court made a pertinent statement that the alleged misconduct must be shown to be prejudicial, as follows:

"In considering the showing made, the affidavits of the jurors, that their verdict was or was not affected by what happened, have to do with matters that inhered in the verdict and are not to be considered. The question for our determination is whether these happenings and alleged misconduct of the jurors and bailiffs were of such a character as to have probably influenced or prejudiced the jury in the rendition of the verdict. State v. Clark, 210 Iowa 724, 231 N.W. 450."

VII. It is the further claim of the appellant that because of the long duration of the jury deliberation, the claimed illness of some of them, their desire to be able to conclude their jury service and go home, the appellant was denied the right of a fair and impartial trial that is guaranteed by the 5th and 14th Amendments to the Constitution of the United States and by sections 9 and 10 of Article I of the Constitution of Iowa. The basis, very largely, of this claim is the affidavit of the juror, Esther Steimel. In this connection it was also claimed in a further division of the appellant's brief that upon the whole record the defendant did not have a fair and impartial trial as contemplated by the constitutional provisions heretofore set forth. In considering these several contentions, the appellant makes reference to phases of the trial which have been commented upon previously. The appellant thus seeks to present the issue that he was deprived of his liberty without due process. We do not find merit in this contention. In State v. Manley, 197 Iowa 46, 52, 196 N.W. 724, 727, we stated:

■■■■ "A criminal prosecution in a state court, based upon a statute not repugnant to the Federal Constitution, and a conviction according to the settled course of judicial proceedings, as established by the law of the state, so long as it includes notice and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is due process of law, in a constitutional sense. *Frank v. Mangum*, 237 U. S. 309 (59 L. Ed. 969)."

In the present case there is no showing that the established modes of procedure were not followed. The case was carefully tried and we are satisfied that the appellant's rights were amply protected.

■■■■ VIII. It is the claim of the appellant that the evidence in this case was not sufficient to prove the crime charged, and it was wholly insufficient upon which to base a verdict of guilty and that the court erred in overruling the appellant's motion to instruct and direct a verdict for the appellant at the conclusion of the State's evidence and also at the conclusion of all the testimony

in the case. There is no merit to this contention. There was ample evidence to justify the submission of the case to the jury.

Upon a review of the entire record and a careful consideration of the several propositions presented by the appellant in his brief and argument we have concluded that there is no basis for a reversal of this case and it is therefore affirmed.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.