STATE OF IOWA, Appellee, v. JAMES ARTHUR, Appellant.

**Criminal evidence:** WAIVER OF NOTICE: DISCRETION. Where the
1 court indicated a determination to postpone the trial for the
State to give notice of taking the evidence of witnesses who
were not before the grand jury, and defendant thereupon
waived the statutory notice, it was not an abuse of discretion
to receive the evidence.

**Burglary:** EVIDENCE. Evidence of facts connected with the his-
2 tory of a crime is admissible.

**Same.** Evidence which tends to identify and connect a defendant
3 with the crime charged is relevant and material.

**Same.** Where a defendant, shortly after his arrest, stated that he
4 had never met a certain accomplice in the crime until about
the time of his arrest, it was competent for the State to show
their acquaintance for some time and their association at other
and remote places; and even in the absence of defendant's
statement evidence that they were recently and frequently
together would be competent on the question of conspiracy.

**Same.** Statements of an accomplice made in the presence of de-
5 fendant; and, where it appeared that he was with defendant
on the day of the burglary, his inquiries concerning the way
to the place where the crime was shortly afterward committed,
were competent against defendant.

**Same:** SUFFICIENCY. Evidence in a prosecution for burglary is
6 reviewed and held sufficient to sustain conviction.

*Appeal from Pottawattamie District Court.*— HON. O. D.
WHEELER, Judge.

FRIDAY, DECEMBER 14, 1906.

REHEARING DENIED, MONDAY, JUNE 10, 1907.

DEFENDANT was indicted, tried, and convicted of the crime of breaking and entering, and from the judgment imposed appeals.— *Affirmed.*

*Sims & Killpack* and *Harl & Tinley,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

DEEMER, J.— This is the second time the case has been before us. The opinion on the former appeal is to be found in 129 Iowa, 235. After remand to the district court the case was again tried, resulting in a verdict of conviction. Several questions are presented on this appeal which did not arise on the former trial, and to these we shall first direct attention.

I. When the case was called for trial, the county attorney made application for postponement in order that he might use the testimony of certain witnesses who were not

1. CRIMINAL EVIDENCE: waiver of notice: discretion.

before the grand jury and of whose testimony he had not given the requisite notice as provided in section 5373 of the Code. The court indicated that it would grant the application, whereupon defendant consented to the use of the witnesses without waiting for the expiration of the four days. Of this complaint is made. This matter was so largely in the discretion of the trial court that we should not interfere in the absence of a showing as to abuse of that discretion. Defendant is seeking to take advantage of a mere technicality, and not to advantage himself of any substantial right. No prejudice resulted to defendant, and the court did not abuse its discretion.

II. The building which was broken and entered was a

bank in a small unincorporated town, known as Traynor, in Pottawattamie county. The next morning after the bur-

2. BURGLARY: glary was committed certain tools were found
   Evidence. in the bank building which were taken by breaking and entering from a nearby blacksmith shop. The State was permitted to show these facts over defendant's objections. This was a part of the history of the case, and was properly admitted. *State v. Richards,* 126 Iowa, 497; *State v. Gray,* 116 Iowa, 231.

III. That same night a team was taken from a stable close at hand, hitched to a spring wagon, and driven in the direction which defendant must have gone had he been one

3. SAME. of the guilty parties. The wagon when found
   had broken down in a snowdrift and the animals were loose. Near where the wagon was abandoned was a footprint in the snow which was made as by one jumping from the wagon. One of defendant's shoes was fitted into this footprint and was found to exactly correspond therewith. This evidence was all objected to but we think it was both relevant and material.

A man by the name of Bernstein was undoubtedly one of the parties who broke and entered the bank building. Indeed he pleaded guilty and was sentenced therefor. De-

4. SAME. fendant was in company with Bernstein on the
   evening of the day before the breaking occurred and was also with him next morning and until arrested for the commission of the crime. Shortly after the arrest defendant declared that he did not know Bernstein and had never met him until the day before the arrest. The State showed by many witnesses that this was untrue; that defendant and Bernstein were together some two years before in Colorado; that they were frequently together shortly before the crime was committed in Omaha, Council Bluffs, and at a little town named Minden, which is not many miles from Traynor. Complaint is made of the admission of all of this testimony. We think it was proper to be received. *State v.*

*Arthur,* 129 Iowa, 235 ; *State v. Stevens,* 67 Iowa, 557 ; *People v. Childs,* 127 Cal. 363 (59 Pac. 768) ; *State v. Gadbois,* 89 Iowa, 25 ; *Scott v. State,* 30 Ala. 503 ; *Reinhold v. State,* 130 Ind. 467 (30 N. E. 306).

Even without defendant's statement after arrest, much of this testimony showing that defendant and Bernstein were recently before the burglary frequently together was admissible as tending to prove a conspiracy. Utter strangers are not likely to conspire to commit crime. Recognizing that many of the circumstances were against him, defendant sought to exculpate himself when arrested by saying that he had never met Bernstein until the day before. This denial of acquaintance is very significant, and adds much to the testimony showing that for some days just previous to the burglary these parties were seen frequently together. The cases we have cited fully sustain the ruling of the trial court.

Evidence was adduced regarding statements made by Bernstein in defendant's presence. This was properly received for obvious reasons. After the arrest defendant admitted that he was with Bernstein the day and night before his arrest. The State was permitted to show over defendant's objections, by a witness living two miles east of Traynor, that at about eleven o'clock of the night of the breaking and entering Bernstein inquired of him as to the road to Traynor. This testimony was manifestly competent.

5. SAME.

IV. Defendant's chief complaint is that there is no testimony to support the verdict, and that the court's instructions as to conspiracy and confederation were erroneous. This presents the only serious or debatable proposition in the case. Now, as when the case was before us on a former appeal, the question as to the correctness of the instructions depends upon the sufficiency of the evidence. On the second trial the State proved the relations of defendant and Bernstein substantively, and the jury was instructed to so consider them. In addition to this,

6. SAME: sufficiency.

the testimony as to the footprint in the snowbank is considerably stronger and clearer than when the case was before us on a former appeal. In addition to this, we have the verdict of another jury and the views of another trial judge upon the sufficiency of the testimony. In view of all these facts, we are not now prepared to say that the verdict is without support in the testimony, or that the instructions as to conspiracy or confederation should not have been given. That the bank building was broken and entered by some one is very clear, and there is ample testimony to show that Bernstein was the guilty party or one of the guilty parties. Defendant and Bernstein were friends. They were together the night of the burglary. Defendant admitted this after his arrest, although he said they were in a barn together. They were seen together two or three days before the burglary was committed at the town of Minden, not many miles from Traynor. According to the admissions of defendant, they were at or near Henderson, another small town near Traynor, the day before the crime was committed. They were found in a barn together early in the morning following the burglary. When seen at this barn defendant tried to conceal his identity. They left the barn together and were overtaken by a posse and arrested while in each other's company. Defendant attempted to explain his association with Bernstein in order to exculpate himself, and in so doing lied about his own relations with him. Defendant is a barber who said that he was out looking for work. Surely he did not expect to open a shop at a county cross-roads. The crime was committed in January, and he, a barber, was not out at that time of the year looking for farm work. If he was, it does not appear that he ever inquired for any. Both men were armed when arrested. Bernstein had with him some of the things which safe-breakers use. His hand was injured in such a way as to account for the blood stains found in the bank. The footprint found near where the team and wagon was abandoned was undoubtedly made by defendant's shoe which

he was wearing the night of the burglary. Bernstein inquired the road to Traynor as above indicated and defendant said he was with him that night. Upon this record we think there was sufficient evidence to justify a verdict of guilty. A conspiracy and confederation may be proved by circumstantial evidence and we think it is so proved in this case and that the jury was warranted in finding defendant guilty.

There is no error, and the judgment is *affirmed.*