STATE OF IOWA, Appellee, v. J. R. GLENDENING, Appellant.

APRIL 3, 1928.

*James Parsons* and *Charles W. Bowers,* for appellant.

*John Fletcher,* Attorney-general, and *Carl S. Missildine,* County Attorney, for appellee.

DE GRAFF, J.—The fact issue in this case is the signing, as indorser, of the name "Justin Miller" on the check upon which the indictment for forgery is based. The payee named in this check is Justin Miller. He did not indorse the check. The defendant denied any connection whatsoever with the theft, forgery, or passing of the check. Some person wrote the name "Justin Miller," and on that indorsement Younker Brothers cashed the check. The credit man at Younker's, who placed his "O. K." on the check for the purpose of cashing it, testified that he did not have the slightest recollection of the person who presented the check. There is no direct evidence that the check was ever in the possession of the defendant. In brief, there is no direct evidence of the commission of the crime charged against the defendant. Although it was not incumbent upon the State to prove that the appellant stole the check, or that he uttered it, the cause was tried upon that theory.

The case on the factual side may be briefly noted. Justin Miller and the defendant Glendening were absolute strangers to

each other. Justin Miller was employed as a traveling salesman for the Jahn & Ollier Engraving Company of Chicago. He frequently came to Des Moines, and always stopped at the Brown Hotel in said city. During the week of February 24, 1927, he did not visit Des Moines. Apparently, the salary check in question was sent by his employer to him at the LaFayette Hotel, in Clinton, Iowa. How the check ever reached the Brown Hotel, if it did, is a matter of speculation; as no one testifies that it was received at the Brown Hotel, and there is no competent evidence that the check was forwarded from Clinton to Des Moines.

It is the claim of the State that the check was received by the Brown Hotel and placed in the mail rack of the hotel, and that the defendant in some manner extracted the check from the mail box. The most that can be said in this particular, if it be assumed that the letter did find lodgment in the mail rack, is that the defendant had the opportunity to take the letter from its depository. The defendant lived at the Brown Hotel, and had been seen sitting on the bell boys' bench at the end of the counter, within a few feet of the mail rack. In order to purloin a letter from the mail rack, it was necessary to go behind the counter of the hotel; and, under the rule of the hotel, no one except employees was permitted to go behind the counter. The defendant had never been seen behind the counter, and he positively denies that he ever was.

The defendant is a married man, 53 years of age, engaged in the real estate business and in buying and selling notes and mortgages. He owns some real estate in Des Moines, and also a property in Monmouth, Illinois, which he valued at $15,000.

Evidence was introduced by the defendant, tending to prove the fact that he had a good reputation for honesty and fair dealing. The only evidence relied upon by the State for a conviction is the testimony of two handwriting experts, who, as witnesses, pointed out the similarities of the writing of the indorsement "Justin Miller" to the defendant's signatures on certain instruments signed "John R. Glendening," or "J. R. Glendening," and also the voluntary writing of the name "Justin Miller" by the defendant at the trial of this case, at the request of the prosecuting attorney. The two handwriting experts further testified that, in their opinion, the indorsement on the check and

the admitted signatures were done by the same person. Such is the factual setting.

The two primary propositions relied upon for a reversal involve (1) a requested instruction refused by the trial court, and (2) the sufficiency of the evidence to sustain the verdict.

I. The instruction requested by appellant and refused by the court was: "You are instructed that the State's case rests entirely on circumstantial evidence." It is obvious that this case did rest on circumstantial evidence. The requested instruction should have been given as supplementary to the instruction prepared and read to the jury, although we would not reverse for this assigned error *per se.* There was no direct evidence of the commission of the crime by the defendant. No witness testifies that he saw the appellant indorse the name "Justin Miller" on the check. No witness testifies that he saw him pass the check or have it in his possession. The trial court did, by an instruction which is not subject to legal criticism, define circumstantial evidence, and further stated:

"In no case is it necessary, in order to establish a criminal charge against a defendant, that there should be direct proof of his guilt by persons who were present and saw him commit the crime. The evidence may be, and frequently is, not direct, but circumstantial."

In *State v. Blydenburg,* 135 Iowa 264, the evidence was wholly circumstantial. We quote from the opinion:

"We think the jury should have been distinctly informed that the State's case rested entirely upon circumstantial evidence, and that in such connection the established and approved rules governing cases of this class should have been clearly set forth."

See, also, *State v. Brazzell,* 168 Iowa 480, and *State v. Clark,* 145 Iowa 731.

II. Does the evidence sustain the verdict? We think not. This court will not substitute its conclusion in place of the verdict unless from the entire record it appears that there is such a want of support for the finding of the jury as will require a reversal. *State v. Derry,* 202 Iowa 352; *State v. Kress,* 204 Iowa 828; *State v. King,* 198 Iowa 325; *State v. McKenzie,* 204 Iowa 833; *State v. Van Gorder,* 196 Iowa 782.

The motion for new trial should have been sustained. The judgment entered is—*Reversed.*

All the justices concur.