STATE OF IOWA, Appellee, v. J. A. LOWENBERG, Appellant.

No. 40487.

JUNE 24, 1932.

REHEARING DENIED MAY 23, 1933.

See State v. Blackledge, 216 Iowa 199, 243 N. W. 534.—

Parsons & Mills, John C. DeMar, and Lloyd L. Duke, for appellant.

John Fletcher, Attorney-general, Carl S. Missildine, County Attorney, and Alex M. Miller, Assistant County Attorney, for appellee.

STEVENS, J.—The indictment charges the defendant with the crime of conspiracy to defraud the Ancient Order of United Workmen. He was from 1920 to 1928 Grand Master of the Order. The evidence relied upon to establish his guilt is wholly circumstantial. Four separate and distinct transactions in which considerable sums of money were obtained from the Order are proven in detail. The alleged connection of the defendant Lowenberg therewith is relied upon by the state to establish the crime charged in the indictment. The defendant, by virtue of his office as Grand Master was a member of the loan committee of the Order whose funds were loaned upon real estate in the several counties of this state. The overt act charged in the indictment involved a loan upon a 200-acre tract of land located in Madison county. The facts established by direct testimony are not in dispute. In each of the series of transactions, with possibly one exception, Blackledge, jointly indicted with Lowenberg, agreed to purchase the land upon which loans were subsequently made and for a small consideration procured some available person to accept a conveyance of the title to sign applications for loans and to execute notes and mortgages to the Order.

In the transaction charged in the indictment, the purchase price of the land was $11,000. Title was taken in the name of one C. D. Jones to whom Donohue, who was operating with Blackledge, paid $25.00 for his services. A loan of $15,000 upon the application of Jones was made upon this tract. A warrant for $14,690 was drawn upon the funds of the Order payable to Jones. The proceeds of the warrant were paid upon what appears to have been the forged endorsement of Jones as follows: $11,000 to the seller and $3,690 to Blackledge. Nothing, at the time of the trial below, had been paid upon this loan. The evidence shows that the land was worth approximately the purchase price.

Prior to the consummation of the Jones transaction, three other loans of similar character were made. One Moffett became the purchaser of a large tract of land in Benton county. According to the testimony, the tract was worth from $11,000 to $15,000. The Order loaned Moffett $20,000 thereon. This loan was procured for the borrower by Blackledge. The purchase price of $11,000 was paid from the proceeds of a warrant for $13,000 drawn on the Order and payable to Moffett. A warrant was also drawn for $6,600, which was finally returned to the Order. It is claimed in connection with this loan that Blackledge had entered into a contract with Moffett and one Streeter to sell them a number of separate tracts of land. A contract of such import dated July 13, 1926, was introduced in evidence. The loan of $20,000 on the Benton county land was made in September 1926 following. The testimony tends to show that the warrant for $6,600 was turned back to the Order for the purpose of paying delinquent interest upon loans made thereby upon land described in the contract between Blackledge and Moffett. The delinquent interest appears, however, to have been cancelled and the proceeds of the warrant were turned over to the Order. Out of the $13,000 received by Moffett the purchase price of the land was paid and a portion of the rest of it used in perfecting the title to the land. Of the balance, $425 was paid to Lowenberg and $275 to Blackledge. This transaction was concluded by an attorney employed by Moffett at Vinton. The attorney testified that Blackledge claimed that $1,000 of the proceeds of the loan was due him for services rendered to Moffett in its procurement. The attorney declined to pay the amount to him but an order signed by Moffett therefor appears in the record. It is claimed by the defendant that the $425 received by him was for the purpose of paying a loan previously made to

Blackledge of that sum. A check drawn by defendant payable to Blackledge for $400 was introduced in evidence. The word "loan" appears to have been written in the lower left hand corner of the check. The defendant further testified that at the time of making the loan, he gave Blackledge $25.00 in cash.

The next transaction shown in the evidence is of a similar character and concerned a tract of land in Van Buren county. The purchaser designated in this case was Sam DuVall. The purchase price of the land, which was sold by a referee in partition, was $8,745. DuVall was procured as a purchaser by Blackledge and was paid $300 for his services. DuVall moved upon the land but did not stay. The loan made upon this land was $11,000. DuVall never saw the warrant for $11,000, although it purported to have been endorsed by him. The purchase price was paid by Blackledge from the proceeds of the loan.

The remaining loan referred to in the testimony was made upon land in Union county. The loan papers were executed in this case by one Morris procured by Blackledge for that purpose. The purchase price of this land was $14,652.40 and the loan $17,800. The proceeds of the loan were used first to pay a mortgage of $10,000 on the land to the National Life Insurance Company. The $10,000 was paid by Lowenberg to the Central State Bank which held the mortgage for payment. Blackledge, a man by the name of Rex and J. V. Richardson, who was interested in the transaction, were all present at the bank when this payment was made. Blackledge delivered to Richardson a warrant drawn on the Order for $6,434, made payable to and purporting to have been endorsed by Morris to Richardson. This sum was largely in excess of the amount due Richardson. The transaction was not finally consummated at the Central State Bank but at the Iowa National Bank to which Blackledge and Richardson went for that purpose. The warrant was cashed, Richardson paid the amount due him and the balance, approximating $3,000, was appropriated by Blackledge. The attorney for the seller testified that Blackledge asked him if he would take a check from the lender for a sum in excess of the purchase price and give him, Blackledge, a check for the difference. This the attorney refused to do.

The method of making loans by the Order appears to be for one or more members of the loan committee to inspect the land upon which an application for a loan has been received. Each of the

tracts upon which the loans referred to were made were inspected by the defendant in company with Blackledge. The Benton county land, upon which the loan was made to Moffett, was perhaps also inspected by one other member of the loan committee. In some instances the land was appraised by disinterested parties. The usual and ordinary course of dealing, so far as the records of the Order are shown in the evidence, was followed in each of the transactions in question. Each of the loans was grossly excessive and did not comply with the requirement of section 8829 of the Code which requires that loans be made only in an amount not to exceed one-half of the value of the land.

 Blackledge was a real estate agent and broker residing at Keosauqua. He was a member of the Order but the defendant became personally acquainted with him after he became Grand Master. Except the check for $400 forwarded to the defendant by the Vinton attorney, the record is utterly barren of any direct evidence tending to show that the defendant received any portion of the sums fraudulently taken and appropriated by Blackledge. That appellant sought by fraud and connivance to dissipate the funds of the Order, or any portion thereof, solely for the benefit of Blackledge is hardly believable. In the first place, an honest man would not have done so and a dishonest one would have been induced to such action only for self-aggrandisement or for personal advantage in some form or other. The state was not required by direct evidence to prove that the defendant participated in the appropriation of the several sums fraudulently obtained in the manner shown. A criminal conspiracy may be proven by circumstantial as well as by direct evidence. State v. Manning, 149 Iowa 205, 128 N. W. 345; State v. Priebe, 198 Iowa 609, 199 N. W. 276; State v. Arthur, 135 Iowa 48, 109 N. W. 1083. Indeed, the crime of conspiracy is usually established by circumstantial rather than by direct proof. Conspiracy is defined by section 13162 of the Code as follows:

"If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the * * * property, or rights in property of another, * * * they are guilty of a conspiracy, and every such offender, and every person who is convicted of a conspiracy at common law, shall be imprisoned in the penitentiary not more than three years."

Proof of one or more overt acts, when the same is required by

law to constitute the offense is required by section 13902 of the Code. The overt act necessary in such cases must reach far enough towards the accomplishment of the desired result to amount to a commencement of the consummation. State v. Roby, 194 Iowa 1032, 188 N. W. 709.

The defendant, testifying in his own behalf, denied that he knew the purchase price of the land, except in the single instance already shown. A part of his duties as Grand Master was to examine the abstracts of title furnished by prospective borrowers. The defendant is a lawyer of many years experience and must be presumed to have been familiar with referee's sales on partition and the usual course of procedure in relation thereto. He admitted that he knew that the Van Buren county land was sold by a referee in partition for $8,200, or $3,300 less than the amount of the loan approved by him and consummated thereon. The testimony on behalf of the state tends strongly to show that each of the several tracts of land involved were of inferior quality and of extremely low market value. The defendant claimed and assumed to have knowledge as to the quality, adaptability and value of farm lands and, in explanation of the loan upon the Van Buren county land, testified that he believed the price at which it was sold by the referee was far below its true value.

It is strenuously argued by counsel that the evidence is utterly insufficient to sustain the verdict. This is the vital and controlling question in this case. It is peculiarly the province of the jury to pass upon questions of fact. Reversal upon the ground of the insufficiency of the evidence to justify a conviction will follow only where the evidence to support the verdict is so utterly wanting that it cannot be sustained. State v. Manly, 211 Iowa 1043, 233 N. W. 110; State v. Glendening, 205 Iowa 1043, 218 N. W. 939; State v. Cordaro, 206 Iowa 347, 218 N. W. 477; State v. Kinart, 196 Iowa 492, 193 N. W. 413; State v. Madden, 170 Iowa 230, 148 N. W. 995.

If participation by the defendant in one or all of the several fraudulent transactions is established by the evidence or reasonably to be inferred from all of the facts and circumstances, the verdict of the jury must be sustained. It is, of course, possible that the transactions may have been consummated by the cunning and skillful manipulation of Blackledge and others admittedly connected therewith without either guilty knowledge or criminal participation by the defendant.

During the years 1926 and 1927, there was much speculation in land and uncertainty as to its real market value. It is a matter of common knowledge that there has been much inflation and deflation of values during a portion of the last decade. Defendant might have been deceived on the question of value. We think it obvious, however, that he must have known in some or all of the transactions that the borrower desired the money to use in part at least in the payment of the purchase price, which was less than the sum borrowed. Notwithstanding his knowledge of this fact, he appears never to have inquired concerning the same. The grossly excessive character of the loans cannot be overlooked. It is scarcely conceivable that the defendant could have been deceived to the extent of believing that the value of the land was at least double the amount of the loan applied for. The jury had a right to assume that he was competent to perform the duties of his office. The uncertainty that arises from the evidence as to the defendant's guilt is from the absence of any direct testimony tending to show that he profited by the transactions or of other definite facts tending to establish conspiracy as alleged against him. The burden was, of course, upon the state to prove the conspiracy beyond all reasonable doubt. This was the gist of the offense. State v. Savoye, 48 Iowa 562; State v. Clemenson, 123 Iowa 524, 99 N. W. 139; State v. Madden, supra. The jury was, no doubt, greatly influenced by the fraudulent character of the several transactions. The evidence of fraud in the procurement of the loan is conclusive. The several loans could not have been made without the approval and cooperation of the defendant. This fact alone would not, however, support a verdict against him. Something more must be shown. But one of two conclusions is possible from the evidence. The defendant was either the victim of a series of gross frauds perpetrated upon him by Blackledge and his confederates without any knowledge thereof or of an evil purpose upon his part, or else guilt of the crime charged is made out. There is no middle ground to be considered. The connecting link essential in the chain of evidence was knowledge and participating on his part in one or more of the admittedly fraudulent transactions. Neither the guilt nor innocence of the defendant is susceptible of exact demonstration upon the facts shown in evidence. By this is not meant that the evidence is irreconcilable with the guilt but only that the conclusion of guilt or innocence must be inferred

from circumstances alone, without any direct proof of the conspiracy or participation in the fraudulent transactions.

■ · It is the law, and the court so instructed the jury, that in order to justify a conviction upon circumstantial evidence· alone, the guilt of the defendant must be established beyond a reasonable doubt and must be inconsistent with any other reasonable conclusion or theory of the evidence. The inference to be drawn from the evidence was for the jury. Its duty was to determine therefrom and from all of the facts and circumstances the question of the defendant's guilt or innocence. This court cannot say as a matter of law that an inference of guilt may not reasonably be drawn from all the facts and circumstances. The defendant did know that the loan sought upon the Van Buren county land exceeded the price for which it was sold by the referee. It is difficult to find an explanation of what followed upon any rational theory of innocence. Much emphasis is given by the attorney-general to the $400 check paid to the defendant out of the proceeds of the Benton county loan. This item is explainable upon a rational theory of innocence but when considered with the record as a whole tends to establish the contrary.

The defendant denied any combination or complicity of any kind with Blackledge, or any one else, to injure the property or funds of the Ancient Order of United Workmen. He gave a detailed statement of his inspection of the several tracts of land, a description of each and reiterated his firm belief that, in all he did, he was acting in his capacity as Grand Master for the benefit of the Order. The remaining testimony offered in his behalf was in support of his general reputation for honesty, integrity and general moral character. The witnesses who testified on these subjects are men of high character and standing in the community where they and the defendant reside. Giving full weight to all of the testimony in the record, we are yet unable to say, as a matter of law, that the verdict · is without support in the evidence.

II. Error in certain paragraphs of the court's charge to the jury is also urged by defendant. We have carefully examined the exception preserved to the instructions and each of them and have also gone carefully over the charge as a whole and we find no error therein. Some of the instructions complained of were favorable to the defendant. The exceptions preserved in most instances were insufficient to present the question argued by counsel. Exceptions to instructions to be available in this court must be definite and point

out the particular portion thereof of which complaint is made. This rule was not observed by appellant in this case. We conclude, after a careful analysis of the entire record, that no reversible error is to be found therein. It follows that the judgment must be and it is affirmed.—Affirmed.

EVANS, DE GRAFF, KINDIG, MORLING, and FAVILLE, JJ. concur.

GRIMM, J., (dissenting)—The evidence is not sufficient.