STATE OF IOWA, Appellant, v. OTTO V. SCHRECK, Appellee.

No. 45394.

DECEMBER 31, 1940.

OPINION ON REHEARING JANUARY 13, 1942.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and L. A. Winkel, County Attorney, for appellant.

Edward L. O'Connor and L. E. Linnan, for appellee.

WENNERSTRUM, J.—The defendant has been jointly indicted with Amos M. Schreck, his brother, charged in one count of a joint indictment with the crime of conspiracy, in that the two persons named conspired together with the intent of fraudulently and maliciously injuring Raymond Alderson which count of the indictment was based upon the violation of section 13162, Code of Iowa, 1935. The second count of the indictment, wherein the defendant was also jointly named with Amos M. Schreck, charged the defendant with the crime of malicious threat to extort, which offense was based upon the violation of section 13164, Code of Iowa, 1935. The two defendants were granted separate trials and upon submission of the case against the defendant herein, the court directed a verdict in his favor. The State has appealed.

This case has heretofore received the attention of this court, an opinion concerning it having heretofore been filed, which is found in 295 N. W. 455. In that opinion we held that inasmuch as it was then our judgment that the matter before us was very largely a fact question we would not give consideration to the facts alone in passing upon the merits of the case. A petition for rehearing was presented by the State which brought to our attention that our passing upon the facts presented and the law applicable thereto is advisable and necessary inasmuch as it will be a guide in connection with other pending criminal charges. A rehearing has been granted. Consequently our opinion, as previously reported, is herewith withdrawn and this opinion is submitted in lieu thereof.

The attitude of this court as to appeals of this character has been succinctly stated in the recent case of State v. Traas, 230 Iowa 826, 828, 298 N. W. 862, 864, where we said:

"* * * if the appeal involves questions of law, either substantive or procedural, whose determination will be beneficial

generally, or guide the trial courts in the future, the decisions of this court thereon will be obligatory as law. [Citing cases.] As stated in State v. Woodruff, 208 Iowa 236, 245, 225 N. W. 254, 257, in such cases: 'It is not for us to determine the facts. Our sole duty is to determine the proper rules of law applicable to the facts.' "

Consequently we deem it our duty and responsibility to apply the law to the facts in this case so that it may be ascertained whether the court was correct in its ruling in directing a verdict for the defendant. In thus passing upon this matter it is our purpose to set forth a guide for the courts of this state in cases of a similar character.

As a preliminary basis for our consideration of the matters which are before us it is deemed advisable to note the two sections of the statute upon which the indictment is based, which are hereinafter set out.

Section 13162. " 'Conspiracy' defined—common law. If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the person, character, business, property, or rights in property of another, or to do any illegal act injurious to the public trade, health, morals, or police, or to the administration of public justice, or to commit any felony, they are guilty of a conspiracy, and every such offender, and every person who is convicted of a conspiracy at common law, shall be imprisoned * * *."

Section 13164. "Malicious threats to extort. If any person, either verbally or by any written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another, with intent to extort any money or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall be imprisoned * * *."

The facts upon which the charges were brought against the defendant are noted in the following summary of the evidence.

Prior to April 11, 1939, a representative of a business organization known as the Millard Service of Des Moines, Iowa,

called on Howard Hoenk, the operator of a garage in Algona, Iowa. As a result of conferences between this representative of the Millard Service and Mr. Hoenk a contract was entered into between the parties wherein it was agreed that the Millard Service would undertake to check the employees of Hoenk for honesty, and to endeavor to determine whether they were embezzling money.

The week following the signing of the contract Otto Schreck and Amos Schreck came to Algona, and the evidence shows that Howard Hoenk had a preliminary conversation with Amos Schreck at an Algona hotel. It is also shown that later in the week, Hoenk conferred with the defendant, Otto Schreck, at the hotel. In these conversations there were discussions as to the manner in which the garage business was carried on and as to what means and methods could be used in checking the employees as to their honesty. It is shown that Hoenk saw and conferred with both Otto Schreck and Amos Schreck several times that week. One of the employees of Hoenk was Raymond Alderson. After the preliminary conferences between Hoenk and Otto and Amos Schreck, Alderson, at Hoenk's request, went with him to the hotel and there met and talked with Amos Schreck. Numerous inquiries as to the nature of Alderson's work, and his interest in his job, were made by Amos Schreck. Hoenk did not remain with the two men at the hotel. He left shortly after he and Alderson went there. As a result of the conference between Amos Schreck and Alderson it is shown by the evidence that Alderson gave a signed statement admitting that he had embezzled $1,300 of his employer's money. This last incident occurred on April 10, 1939. On the next day Hoenk, Alderson, Otto Schreck and an attorney representing Mr. Hoenk met in conference. At that time there was some suggestion made that Alderson should endeavor to obtain money from his father to repay this amount but he refused to do so. Alderson finally stated that he would go and see his grandfather which suggestion was carried out. Later that day William Alderson, the grandfather, a young lady acquaintance of Alderson, Otto Schreck and Hoenk went to Cylinder, Iowa, to confer with a banker, relative to the obtaining of a loan. No arrangements

were made with the banker for a loan. The next day Alderson transferred to Hoenk an automobile for which a credit allowance of $650 was given by Hoenk on the sum of $1,000. This amount was the basis upon which the claimed $1,300 embezzlement had been settled. The balance of $350 was paid by a note signed by Raymond Alderson, William Alderson, and the young lady friend of Raymond Alderson.

It is shown by the evidence that a portion of the proceeds received was paid by Hoenk by check to Otto and Amos Shreck who represented the Millard Service.

It is shown by the testimony of Raymond Alderson that at the conference with Amos Schreck at the hotel on April 10, 1939, he admitted to Schreck that he had in his pocket at that time $1.25 that he had appropriated from the Hoenk garage. At this conference, according to Alderson's testimony, Amos Schreck displayed to him a large envelope with a number of slips in it but did not disclose the nature of these slips. Schreck during the course of this conference did some figuring and then called in a stenographer and began dictating. Schreck informed Alderson that the amount of his embezzlements amounted to $1,300. After the paper was prepared that Schreck had dictated he handed it to Alderson and asked him to read it. The further testimony of Alderson concerning this statement is as follows:

"And he said if I didn't sign that they would present the paper to the county attorney, whereupon I would be prosecuted and naturally I was scared and signed it. And he told me that this paper was to be filed, if I did sign it, and not to be used against me—it was to be filed in the Chrysler Corporation—that these figures had to be big enough in order to please the Chrysler Corporation.

"And after I had signed the paper, he told me to go on back to work, and I said then I would have a good chance going back over to Mr. Hoenk's place and going to work after signing this paper, and he said Hoenk wants you to come back to work. I said I don't think he does.

"Q. Now had you taken thirteen hundred dollars from Howard Hoenk?

"A. No, Sir."

Alderson's further testimony was to the effect that the total amount of his appropriation of money from his employer during the whole period of his employment would be approximately $10.

There is testimony to the effect, as previously stated, that Otto Schreck accompanied certain individuals to the home of William Alderson, the grandfather, and that while there in conference, Otto Schreck said that unless there was some arrangement made by which Raymond Alderson could pay the $1,000 that he, Schreck, could turn this account over to the bonding company and collect the $1,300 and the bonding company would prosecute Alderson. It was also shown at a later conference at the office of the attorney representing Mr. Hoenk that Amos Schreck said if the $1,000 was not paid he, Schreck, would turn the account over to the bonding company and Hoenk could collect the $1,300 and the bonding company would prosecute Alderson.

There is also testimony of conferences with other employees of the Hoenk garage other than Alderson in which efforts were made to obtain statements from these employees and to collect certain amounts of money. In some cases statements were obtained and settlements were agreed upon, although in each case the employee testified at the trial that the amount set forth in the statement was very much in excess of any amount that they may have appropriated from their employer.

The particular grounds upon which the motion for a directed verdict was based were that there was insufficiency of evidence to prove the charges made in the respective counts of the indictment and further that inasmuch as it was claimed that the State had failed to establish by competent evidence the conspiracy as alleged in count 1 of the indictment that count 2 would consequently be unsupported by sufficient evidence. It is also alleged that there was no direct evidence of any unlawful arrangement or agreement entered into between Otto V. Schreck and Amos Schreck.

The necessity of reasonable brevity prevents us from setting forth all the evidence in detail. However, as previously noted, it will be observed that Otto V. Schreck and Amos Schreck came to Algona together and, although the evidence does not show their presence together during all the conferences testified to,

yet the facts as developed show their close association and their mutual interest in connection with the matters upon which the State bases its charge of conspiracy along with the charge of extortion.

In 11 Am. Jur. 570, section 38, it is stated:

"Conspiracies need not be established by direct evidence of the acts charged. They may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purposes to be accomplished. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused which are committed in pursuance of an apparently criminal or unlawful purpose in common to them. The existence of the agreement or joint assent of the minds need not be proved directly, but may be inferred by the jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed upon the unlawful purpose and its pursuit by common means. If it is proved that the defendants, with a view to the attainment of the same purpose, pursued such purpose by their acts—often by the same means, each performing some part thereof—the jury will be justified in concluding that they were engaged in a conspiracy to effect a common object. * * *."

In the case of State v. Priebe, 198 Iowa 609, 610, 611, 199 N. W. 276, 277, there is disclosed a situation that is somewhat similar to the present case. The court submitted the case to the jury, and in commenting upon that fact, this court said:

"The question is: Did the court err in holding that the State established a prima-facie case of conspiracy as a basis for the admission of the declarations and statements of the agents of the defendant? These declarations constitute the gist of this case; and, if the challenge to their competency is well taken, under the record before us, the verdict cannot be sustained. Under the instant facts, it is essential to establish a conspiracy, to connect the defendant with the substantive charge in the indictment. The judgment can be affirmed only on the theory of a conspiracy, which involves a concert of action between the defendant and his agents. In other words, if it may be said that

no conspiracy is shown independently of the statements made by the agents of the defendant, it is clear that the latter could not bind the defendant by what they said in his absence, and without proof of authority to make said statements or declarations. Ordinarily there should be prima-facie proof of the existence of a conspiracy before evidence of any acts or declarations by a coconspirator is received. This involved a showing of concert of action to put over a fraudulent scheme. The order in which evidence shall be introduced rests in the sound discretion of the trial court. State v. Walker, 124 Iowa 414. The better practice, however, is to require a prima-facie showing of conspiracy before receiving such evidence. State v. Gilmore, 151 Iowa 618. The fact of conspiracy may be established by circumstantial evidence. It is sufficient if there is proof of concert of action. This is true in the administration of both civil and criminal law. Hanson v. Kline, 136 Iowa 101; State v. Arthur, 135 Iowa 48. In the determination of this appeal, the decision necessarily rests on the fact side. There can be and is no quarrel with the legal principle to be applied.''

After a study of the whole record, guided by our previous holdings, it is our judgment that the court erred in directing a verdict for the defendant on the basis that there was an insufficiency of evidence to support the allegations of the two counts of the indictment. We have given consideration to the other grounds of the motion and hold that they are without merit. It is therefore our judgment that the trial court was in error in its ruling wherein it directed a verdict for the defendant and for that reason we therefore reverse. We hold there was a sufficiency of evidence to submit both counts of the indictment to the jury.

This reversal in no way affects the defendant, inasmuch as he was discharged by the trial court, and there is no remanding for a further hearing. State v. Traas, supra.—Reversed.

BLISS, C. J., and GARFIELD, STIGER, SAGER, MILLER, and HALE, JJ., concur.