STATE OF IOWA, Appellee, v. LA VERNE SCHENK, Appellant.

No. 46268.

APRIL 3, 1945.

Jordan & Jordan and Edward J. Dahms, all of Cedar Rapids, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, Victor D. Vifquain, County Attorney, Clarence Nichols, of Vinton, and Charles E. Hughes, Special Prosecutor, of Belle Plaine, for appellee.

MANTZ, J.—I. The information upon which defendant was tried and convicted is as follows:

"That said La Verne Schenk on or about the 19th day of April, A. D. 1942, in the County of Benton and State of Iowa, did, with Cato Noeller and Robert Abernathy and others, to the undersigned unknown, conspire together to wrongfully and unlawfully injure the property of the Vinton Produce Company, a partnership, and its employees and the Marshal of the City of Vinton, Iowa, and the Deputy Marshals of the City of Vinton, Iowa, lawfully assembled for the purpose of preventing breaches of the peace and other unlawful acts at and in the vicinity of the property of the said Vinton Produce Company contrary to the peace and dignity of the State of Iowa."

The crime charged was that of conspiracy, as set forth in section 13162, Code of 1939, which is as follows:

"If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the * * * property, or rights in property of another * * * they are guilty of a conspiracy, and every such offender, and every person who is convicted of a conspiracy at common law, shall be imprisoned in the penitentiary not more than three years."

Under this statute the defendant was tried and convicted. II. Before setting forth the legal principles to be applied where the crime charged is that of conspiracy we will briefly review the evidence upon which the State relies to sustain the charge. The State makes no claim that there is direct evidence of the charged conspiracy. Its claim is that

the record shows sufficient facts and circumstances to establish such charge. We think the record fully sustains this claim of the State.

The jury was warranted in finding from the evidence the following facts: The Vinton Produce Company, of Vinton, Iowa, was a copartnership engaged in handling at its place of business various products such as cream, eggs, and poultry, and had a considerable number of workmen of both sexes in its employ. Sometime about April 16 or 17, 1942, there was organized among its employees a local union affiliated with the CIO. The defendant had come to Vinton shortly prior to this time and under his direction the local union was organized. On Saturday, April 18th, some of the workers quit and organized a strike, and the evidence shows that defendant was in charge of its activities. Under his direction a picket line was formed to prevent ingress into the place of business of the company. All the workers did not quit their jobs and walk out. Some claim is made that various officers of the local union were discharged, thereby causing the strike. There was evidence from which the jury could find that various workers refused to abide by the working rules and quit and that others joined in sympathy. Especial effort was made to prevent workers from entering the plant. From the time the picket line was set up it was maintained at all times. Farmers who brought in products were stopped and were urged not to enter. On several occasions cars carrying officials of the company were stopped, some were lifted from the ground, and in some instances efforts were made to tip over such vehicles. Some of those active in the picket line were not striking employees and some did not live in Vinton. Some days prior to the strike the defendant was at a meeting of the Greater Vinton Club, composed of some businessmen in Vinton, at which time the labor situation was discussed. Defendant stated that he was an experienced organizer; that he had participated in the strike at the Ford plant in Detroit; that blood was there shed and lives lost—more than outsiders found out about; that if there was a strike in Vinton it would be a strike that Vinton would never forget; also, that in case of a strike at Vinton he, defendant, would have absolute control, and it was his will which would

govern. Following the incidents of April 18th, the authorities of Vinton, fearing an outbreak of violence, deputized a considerable number of its citizens to act as special police. All were sworn in and gave bonds. They were instructed to go unarmed and prevent violence; they were also advised that it was lawful to strike and that peaceable picketing was permitted. The defendant knew of the precautions being taken.

On Monday, April 20th, an attempt was made to bring into the plant workers who were not strikers and who wanted to return to their jobs. As early as 6:30 a. m. an effort was made to transport them into the plant. The special deputies were there to maintain order. Defendant was there and knew of the purpose of the officers and the effort to get the workers into the plant. There was evidence that the night before defendant was seen distributing clubs to some of the pickets and was heard to tell the pickets that Monday morning some four hundred farmers armed with pitchforks were coming in and that they had to be ready for them. When the various workers not on strike sought to enter the plant, defendant was there, moving about among the pickets and their sympathizers, giving directions. Some of the pickets carried rocks, bricks, and clubs. Both Noeller and Abernathy were there armed with clubs. The special deputies were there attempting to get the workers into the plant. As a truck and cars carrying employees sought to enter the plant the pickets formed in line to prevent their entrance. There were about twenty persons of both sexes in the truck. At that time defendant was out in front and was seen carrying a large stone. As the vehicles, escorted by special officers, approached, the defendant threw a stone or some missile at the truck and this was followed by a general fusilade of bricks and stones. Many of such were later found in the truck; car windshields and windows were broken or shattered and the bodies dented. The fighting became general. Defendant was seen running about giving signals and directions, while Noeller and Abernathy were wielding their clubs, striking various people, knocking them down and injuring them. Some of the group received serious and painful injuries, necessitating medical attention. One had a skull fracture. About the time the

rioting ceased, defendant, addressing some of his group, was heard to say, ''Folks, you done a good job.'' There were other facts and circumstances in the record which the jury could properly take into consideration in passing upon the charge.

While there were contradictions and conflicts in the evidence, yet we think there was sufficient to establish the foregoing.

III. The term ''conspiracy'' has often been defined. The Supreme Court of Kentucky, in Commonwealth v. Donoghue, 250 Ky. 343, 347, 63 S. W. 2d 3, 5, 89 A. L. R. 819, defined it:

''But the broad definition or description everywhere accepted is that conspiracy is a combination between two or more persons to do or accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means.''

█ Regarding the evidence necessary to establish the crime of conspiracy it has been held that the general rules of admissibility of evidence in criminal cases apply, and any competent evidence, direct or circumstantial, including acts and declarations of the parties themselves is admissible. 15 C. J. S. 1140, section 92. The guilt of the accused must be established beyond a reasonable doubt; but circumstantial evidence alone may be sufficient to sustain a conviction. 15 C. J. S. 1146, section 93. There are cited, as sustaining the above: State v. Moore, 217 Iowa 872, 251 N. W. 737; State v. Lowenberg, 216 Iowa 222, 243 N. W. 538; State v. Hartman, 213 Iowa 546, 239 N. W. 107; State v. Terry, 207 Iowa 916, 223 N. W. 870; State v. Priebe, 198 Iowa 609, 199 N. W. 276; Boom v. Boom, 206 Iowa 70, 220 N. W. 17. An actual agreement to enter into a conspiracy need not be proved by direct evidence to warrant conviction for such crime. A prima facie case may be made out by the acts and declarations of the defendant himself. State v. Caine, 134 Iowa 147, 111 N. W. 443; State v. Moore, supra; State v. Stevens, 67 Iowa 557, 25 N. W. 777; State v. Gadbois, 89 Iowa 25, 56 N. W. 272. In State v. Moore, supra (conspiracy), the defendant Moore and another were indicted and convicted in connection with resistance to the law providing for the testing of cows for tuberculosis. There the court held the crime could be shown by circumstantial as well as direct evidence and that

it was the province of the court to determine the order in which the evidence should be introduced. State v. Paden, 199 Iowa 383, 202 N. W. 105; State v. Walker, 124 Iowa 414, 100 N. W. 354; State v. Arthur, 135 Iowa 48, 109 N. W. 1083; State v. Schreck, 231 Iowa 542, 549, 1 N. W. 2d 690, 694. In the Schreck case, this court said:

" 'The fact of conspiracy may be established by circumstantial evidence. It is sufficient if there is proof of concert of action. This is true in the administration of both civil and criminal law. Hanson v. Kline, 136 Iowa 101; State v. Arthur, 135 Iowa 48.' "

The above quotation was taken from a holding of this court in the case of State v. Priebe, supra.

"Conspiracies need not be established by direct evidence of the acts charged. They may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purposes to be accomplished. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused which are committed in pursuance of an apparently criminal or unlawful purpose in common to them. The existence of the agreement or joint assent of the minds need not be proved directly, but may be inferred by the jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed upon the unlawful purpose and its pursuit by common means." 11 Am. Jur. 570, section 38.

"Proof of the combination charged, it has been said, must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation. The nature of the crime usually makes it susceptible of no other proof." 12 C. J. 633, section 226. See, also, 15 C. J. S. 1043, section 29.

"Although the fraudulent and corrupt combination, the common design, is the essential element, it is not necessary to prove that defendants came together and actually agreed in terms to have this common design and to pursue it by common

means and so carry it into execution. Such proof can seldom be made and therefore is not required. It is sufficient to justify the jury in finding a conspiracy if it is shown that the persons charged with conspiring pursued by their acts the same object, often by the same means, one performing one part of an act and the other another part of the same·act, so as to complete it, with a view to the attainment of the object which they were pursuing." 12 C. J. 638, section 231. See, also, 15 C. J. S. 1046, section 30.

In the rather recent case of State v. Schreck, supra, 231 Iowa 542, 547, 1 N. W. 2d 690, 693, the court had under consideration the question of the sufficiency of the evidence to sustain a charge of conspiracy. There the evidence was reviewed and this court held it sufficient. In so doing, ·the court said:

"The necessity of reasonable brevity prevents us from setting forth all the evidence in detail. However, as previously noted, it will be observed that Otto V. Schreck and Amos Schreck came to Algona together and, although the evidence does not show their presence together during all the conferences testified to, *yet the facts as developed show their close association and their mutual interest in connection with the matters upon which the State bases its charge of conspiracy along with the charge of extortion.*" (Italics supplied.)

On this same matter, we call attention to the quotation following, from State v. Lowenberg, supra, 216 Iowa 222, 227, 243 N. W. 538, 541:

"It is strenuously argued by counsel that the evidence is utterly insufficient to sustain the verdict. This is the vital and controlling question in this case. It is peculiarly the province of the jury to pass upon questions of fact. Reversal upon the ground of the insufficiency of evidence to justify a conviction will follow only where the evidence to support the verdict is so ·utterly wanting that it cannot be sustained. State v. Manly, ·211 Iowa 1043, 233 N. W. 110; State v. Glendening, 205 Iowa 1043, 218 N. W. 939; State v. Cordaro, 206 Iowa 347, 218 N. W. 477; State v. Kinart, 196 Iowa 492, 193 N. W. 413;

State v. Madden, 170 Iowa 230, 148 N. W. 995." See, also, State v. Keul, 233 Iowa 852, 5 N. W. 2d 849.

IV. The first error urged by defendant is predicated upon the overruling of defendant's motion, made when the State had rested, "to take from the consideration of the jury all testimony of all witnesses in relation to injury or damage to any of the cars as testified to by the various witnesses at the time of the happening on April 20, 1942, except the truck, for the reason that the same is incompetent, irrelevant, immaterial and at variance with the allegation of the information and not binding on the defendant."

It seems to us that such an assignment, composed in part of argument, is indefinite, general, blanket in form, and is not sufficient under the Rules of this court to present anything for our consideration and determination. It fails to point out the particular evidence sought to be stricken, whether the same was objected to, or the witness giving such testimony. Under our Rules the assignment is not sufficient. State v. Perkins, 208 Iowa 1394, 227 N. W. 417; State v. Briggs, 207 Iowa 221, 222 N. W. 552, and cases there cited.

We think there is another reason why such claim of error is without merit. In Division II of this opinion we reviewed the evidence somewhat in detail, the disputed as well as the undisputed. We deem it unnecessary to repeat what was there set forth. The error urged, as above set forth, related to incidents happening on Monday, April 20th. It was on this date the truck, with other vehicles following, and in which a number of workers were riding, sought entrance into the company plant.

A number of eyewitnesses testified to the incident and identified and pointed out defendant, with the others named, as being an active participant in the attempt to prevent the vehicles and the workers riding therein from entering the premises of the company. The defendant does not deny that violence took place at that time. There can be little question as to how the incident arose and the results thereof. No citation of authority is necessary to sustain a holding that such evidence was admissible. It was all a part of the same transaction: a part of the res gestae. All of the vehicles were together and under the

control of the company and engaged in transporting nonstriking workers into the plant. They were under the escort of officers of the law—a fact well known to defendant. There was evidence that defendant cast the first missile; others followed. Whether these hit the vehicles would make no difference. The intent to hit was there exhibited. Defendant's argument in support of the alleged error relates almost entirely to the testimony given by one James Bruce, a witness for the State, whose testimony to acts of violence related to Saturday, April 18th. He gave no testimony as to what happened on the Monday following. Bruce gave testimony that on Saturday, when he attempted to enter the plant, members of the picket line seized hold of his car, pulling and pushing it, lifting it from the ground, and making some move in the direction of upsetting it. While the motion of defendant to strike all evidence as to vehicles other than the truck related to what happened on April 20th, yet his argument deals with the testimony of Bruce, which related to the incidents of April 18th. In other words, the motion relates to one thing; the argument, to another. Such being the case, we can hardly logically consider the matter. However, we might say in passing that evidence given by Bruce as to what happened on April 18th might be properly considered along with the incidents which happened on April 20th. It seems to us that the connection and relationship were such that they threw some light on the whole transaction.

We hold that the court did not err in overruling the motion of defendant to withdraw from the jury certain evidence as to the injuries to vehicles other than the truck happening on April 20th. State v. Terry, supra; State v. Campbell, 213 Iowa 677, 239 N. W. 715.

V. The next error relied upon by the defendant relates to Exhibits J to Q, and it is stated that before they were identified they were permitted to lie on a rail in sight of the jury and that this tended to inflame the minds of the jury. In argument defendant refers to the exhibits as photographs. The record shows that these exhibits were pieces of cardboard with tacks stuck through them and were found on the street where the picket line was located on April 20th. The purpose for which these were to be used is quite obvious, and that was to puncture

188

the tires of vehicles attempting to pass. These exhibits were identified without objection, and when offered no objection or statement was made by defendant that these exhibits had been allowed to lie on the rail before their admission or that before being admitted they were in plain sight of the jury. If the exhibits had not been admissible there might be some merit to defendant's claim. In this connection, we suggest that when exhibits are produced, identified, and offered the jury can readily see them and what they consist of. After an exhibit is introduced and taken to the jury room it can be seen, handled, and examined by all the jurors. We can see no merit whatever to a claim that it was error for exhibits to be where they could be seen by the jury, where later such exhibits were duly identified and received in evidence. We might add that all there is in the record to show the display of the exhibits is the statement of defendant's counsel.

 VI. A further error of which defendant complained was in permitting the witness L. J. McDowell to answer, over objection that it was leading, suggestive, and not within the issues, the question: "State whether Mr. Schenk said he was or wasn't an experienced labor organizer?"

In argument defendant implied that the purpose of the question was to show that he was a member of the labor organization known as the CIO and that it was propounded to create prejudice in the eyes of the jury. We have read the record and fail to find any attempt by statement or evidence that could be construed into seeking to discredit or prejudice defendant by reason of his membership in any organization. Nowhere did the State question the right of the workers of the Vinton Produce Company to organize a local union; in fact, that right was expressly conceded by the State. It will be noted that the question in no manner named any particular organization. We set out the answer: "That is what he said." The record shows that defendant on direct examination told of his experience as a labor organizer and stated that he was a member of the CIO. In the face of the record we see no merit to this assignment of error. State v. Smith, 207 Iowa 1345, 224 N. W. 594.

■ VII. Defendant urged as error the failure to sustain motions for a directed verdict. When the State rested, defendant moved for a directed verdict, reciting nine separate grounds therefor. All were overruled. The defendant urged as error the overruling of grounds 3, 4, 6, and 9. We will not set out such grounds. In essence, they challenge the sufficiency of the evidence to warrant the court in submitting the case to the jury. Having heretofore set forth the evidence in considerable detail (Division II), we will content ourselves with saying that the court did not err in permitting the jury to pass upon the question submitted to it. That evidence tended to show that the defendant, Noeller, and Abernathy were present at the time of the riot, acting in concert in using violence to prevent nonstriking workers from going to their places of work. By act and example these persons incited and encouraged others to become active participants in the riot. All knew that the strike was in progress and that some workers did not quit but desired to continue working. Defendant, Noeller, and Abernathy had no connection with the Vinton company. None of them worked there. Defendant had come to Vinton from Detroit; Noeller lived in Cedar Rapids; and Abernathy was an employee of a railroad company.

Defendant claimed in the lower court, and argues here, that the prosecution was had because he was a member of the CIO, a labor union. We do not find that the record, so far as the State is concerned, bears out this claim. That the defendant was a member of such organization or any other had nothing to do with the proceeding. Whatever was in the case along that line was injected into it by the defendant himself. No one questioned the right of the workers of the Vinton Produce Company to organize to further their own interests, and no one questioned their right to employ the defendant to assist in such proceeding. The right of the worker to work is protected by the law. The worker also has the right to quit his job and go on a strike if he sees fit to do so. However, we desire to suggest that membership in an organization, either employee or employer, does not confer on it or its members a license to commit unlawful acts or grant them immunity for so doing. The law does not permit or contemplate anything of this kind.

When this trouble arose there was ample legal machinery to be used in settling disputes between workers and their employers. From the record we infer that such legal machinery had been invoked and was in operation to settle the existing dispute. Such legal machinery does not countenance or contemplate force and violence in labor disputes: it was created to prevent such happenings. Workers may lawfully quit their jobs and may use peaceful means to persuade others to do likewise; but when they attempt, by force, violence, or intimidation to compel others to accede to their demands and quit their jobs they are acting in violation of the law. A worker who has the true interests of labor at heart will never resort to violence to enforce his demands. He will appeal to the law. In this connection it would be well for all to ponder on the words of Pitt: ''Where law ends, tyranny begins.''

VIII. Defendant assigns as error the refusal of the court to permit his witness Edith Crisman to answer, on direct examination, the following question: ''What was the particular purpose of that meeting?'' Up to that point the witness had told of being present at a certain meeting on April 14th, where certain named persons, including the defendant, were present. An objection that the question called for an opinion and conclusion of the witness was sustained. Immediately following this ruling the witness was permitted to testify that certain persons were there to organize and that of the group there were five employees of the Vinton Produce Company. It is quite apparent that the witness stated the purpose of the meeting in the evidence above set forth. We find no prejudice in the ruling of which defendant complains.

IX. Defendant urges as error the admission of certain exhibits—V, W, and R—offered by the State and objected to by defendant. Exhibit V was a short piece of rubber hose; W was a large piece of cement; and R was a sack containing pieces of brick and stone, some of which were found in the truck after the violence had subsided. Defendant argued that Exhibit W was a piece of hose. We think he is in error, as the record shows that Exhibit W was a good-sized piece of cement. Exhibit V was taken from Noeller shortly after the riot. All of these

articles were identified as having been found at the place of rioting immediately after the rioting had ceased. There was evidence that just before violence broke out defendant was seen with a large piece of cement in his hand; that various persons in the crowd opposing the entrance of the truck had bricks and stones in their hands, and some were carrying pieces of rubber hose. There is in the record evidence that none of these articles was at the place prior to the riot.

We think that the court did not err in overruling objections to such testimony. In support of this holding we call attention to some of the authorities dealing with such question:

"Weapons connected with the accused, but not identified as having been used in the commission of the crime, are admissible where the circumstances permit an inference of the likelihood of their having been so used; and such weapons, where they are known or conceded not to have been so used, may nevertheless be admitted where they have probative weight in connection with issues other than the means used. * * * However, a weapon or instrument found in the possession of accused or of his criminal associates which, although not identified as the one actually used, is similar in form and character thereto, or which, from the circumstances of the finding justifies an inference of the likelihood of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred or for the purpose of showing preparation. Moreover, weapons known or conceded not to have been used in the crime are admissible where they have some probative weight or where they constitute part of the picture. So, although there is authority to the contrary, although it is not claimed or proved that it was used in the commission of the crime, a weapon or other instrument found in the possession of accused or his associates when arrested, or at or near the place of arrest, has been held admissible as part of the history of the arrest, even though it is not clearly shown to be the property of accused." 22 C. J. S. 1210, section 712c.

"Although not directly an instrumentality of the perpetration of a crime, certain objects which surround and relate to the

same tend to illustrate it * * * It is well settled that things pertaining to a scene of a crime are competently offered in evidence and displayed before the jury.'' Wharton's Criminal Evidence, Eleventh Ed., 1288, 1289, section 760.

''However, the prevailing view is that it is not necessary that such identification should positively and indisputably describe and relate to such evidence. If a question of fact as to the connection of the articles sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility.'' Wharton's Criminal Evidence, Eleventh Ed., 1292, 1293, section 762 (citing State v. Williams, 195 Iowa 785, 192 N. W. 901).

State v. Williams, 195 Iowa 785, 799, 192 N. W. 901, 907, was a murder case. It was the claim of the State that Williams waylaid, assaulted, and killed a schoolteacher, in a secluded spot near Valley Junction, Iowa. A whisky bottle was found near the body. Over objection of the defendant it was introduced and it was claimed that this was error. The court held its admission proper and said:

''It is evident that anything found in the immediate vicinity of the body that bears a relation to the crime committed was competent.''

The case of State v. Walker, 192 Iowa 823, 837, 185 N. W. 619, 626, was cited by defendant as authority for his claim that the various exhibits were not admissible as lacking identification. We do not think the case is in point. The crime there charged was larceny from a building in Webster City, wherein certain tires and auto accessories were taken on March 18, 1921. On March 29, 1921, certain officers raided a room in Fort Dodge, Iowa, and there found certain auto tires. Certain of these tires were offered as exhibits and, over objection, admitted. This court held this error, saying:

''They [the tires] were not in any sense identified by anyone as the stolen property from the Parkhurst warehouse, nor were they ever shown to have been in the possession of the defendant.''

In the present case all of the missiles offered were found immediately after the riot and at the place where the riot took place. Some were found in the truck after the violence ceased. Both State and defendant have cited the case of State v. McHenry, 207 Iowa 760, 223 N. W. 535. There defendant was indicted for having possession of burglar tools. The State, over objection, introduced certain articles found in the house where the burglar tools were found. Some of the articles were men's and women's clothing, typewriter, dishes and glassware, twenty-three gallon cans of alcohol, bed linens, dresses, slippers, underwear and stockings, canned goods, butter, and coffee. It was held error to admit such articles as they had no relation to the crime and were not described in the indictment. However, the court held proper the admission of a rifle as the jury might find that the rifle could have been used by the burglars to arm themselves in case they were going to commit a burglary, and it might throw light on the possession of the burglar tools. We think that the two cases may be distinguished by the facts. In the present case the various exhibits bore direct relation to the whole affair: the violence, the riot, and the use of and throwing of them in connection with the whole transaction. And in addition there was ample evidence that these identical articles and others similar in character were made use of at the time of the riot.

Defendant does not seriously dispute the showing of violence, the riot, that various persons in the picket line sought to prevent the ingress of nonstriking workers into the plant, the throwing of the missiles, and the shattering of glass in the vehicles. We think that the court properly permitted the jury to pass upon the fact question in connection with the proffered exhibits.

X. Another error urged relates to the admission, over objection, of testimony of witnesses Edith Jack and Eleanor Jack with reference to a hose in the hands of Betty Raue, and in admitting the hose in evidence. The hose was Exhibit V and according to the evidence was taken from Noeller by an officer sometime after the violence subsided. The two witnesses were offered in rebuttal and both testified that they saw Betty Raue emerge from the rioting crowd carrying a hose which was later identified as Exhibit V. There is nothing in the record

to show that this exhibit was introduced by reason of the testimony of these two witnesses. Betty Raue was in the picket line the morning of April 20th. She was not a worker at the Vinton Produce Company but had been at the scene of the strike most of the time since it started. She denied that she had a piece of rubber hose in her hand at the time of the rioting. The two witnesses Edith Jack and Eleanor Jack contradicted her in this respect. We hold this evidence was proper in view of the evidence given by Betty Raue. It seems to us that this claim of error is based upon a misconception of the record and is devoid of merit.

XI. The last claimed error considered is:

"That the court failed to instruct the jury on the accused's theory of the case and failed to give any instructions in relation thereto whatsoever."

Defendant interposed a plea of not guilty to the charge. The court advised the jury of such plea and Instruction No. 2 stated:

"To this Information the defendant has entered a plea of 'not guilty,' which plea, in law, is a denial of, and puts in issue, each and every material allegation of the Information."

In Instruction No. 3 the jury was told:

" * * * that the defendant is presumed to be innocent of the crime charged until he is proven guilty of said crime beyond a reasonable doubt; and the burden is upon the State of Iowa to establish each and every material allegation of the Information beyond a reasonable doubt."

The court on its own motion gave instructions which it seems to us fairly cover the case. Defendant requested the court to give twenty-three instructions, none of which touched upon his theory of the case. If he had wished his theory of the case instructed upon, he should have so requested the court. State v. Kendall, 200 Iowa 483, 203 N. W. 806. Our latest pronouncement upon this matter is found in State v. Wilson, 234 Iowa 60, 17 N. W. 2d 138. Other Iowa cases dealing with the failure of

the court to instruct in the absence of request are there set forth.

As we read the record there was no special defense. The plea was not guilty. This court, in State v. Lightfoot, 107 Iowa 344, 78 N. W. 41, held that it was not error, in the absence of request, to fail to instruct as to an alibi, although evidence had been introduced tending to show that the defendant was not at such place when the crime was committed, and that he could not have participated in its commission. State v. Porter, 74 Iowa 623, 38 N. W. 514; State v. Brandenberger, 151 Iowa 197, 130 N. W. 1065, and cases there cited. It seems to have been the theory of the defendant that he was an organizer of the CIO; that he helped working people to organize under the Wagner Act; that he proceeded to do so in an orderly and lawful manner and at all times counseled against the use of force and violence, and that the court should have set out such theory. In argument the defendant states:

"So that if the court anywhere had laid out the theory of the case from the standpoint of the defendant, he would have done his duty, but the court did not do this. Not only did the court disregard the theory on which the case was tried, but it failed in any of the instructions to clearly state to the jury the fact that under the statutes of the state in order to convict the defendant of conspiracy, the evidence could not come from the lips of co-conspirators. But the defendant would have to be connected with the commission of the offense by other and different evidence."

It seems to us that the claim of defendant is that the trial court should have instructed as to certain specified evidence offered by him. We have held that it is not necessary, in the absence of a special request for instructions relating to the bearing of specific evidence, to instruct as to such matters of evidence. State v. Seevers, 108 Iowa 738, 78 N. W. 705. That defendant was a labor organizer and helped workers organize under the law and advised against force and violence would hardly be a special defense, although it might tend to throw some light upon the ultimate question, to wit, the guilt or innocence of the defendant. We hold that this claim of defendant was without merit. State v. Dunne, 234 Iowa 1185, 15 N. W. 2d 296.

In conclusion we hold that there was ample evidence to sustain the verdict and that there was no reversible error committed in the trial, and the case is affirmed.—Affirmed.

All JUSTICES concur.